Kevin Duaine HAMILTON, Appellant,

v.

STATE of Texas, State.

No. 2–89–314–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 9, 1991.

Rehearing Overruled Feb. 20, 1991.

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall and David L. Richards, Asst. Crim. Dist. Attys., Fort Worth, for appellee.

Before HILL, LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Kevin Duaine Hamilton, was convicted by a jury for the offense of murder. *See* TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1989). Upon finding that the enhancement and habitual paragraphs were "true," the jury assessed appellant's punishment at eighty-six years in the Texas Department of Corrections.

We affirm.

We have taken most of the facts for this opinion from appellant's statement to the police. On January 3, 1988, appellant, the deceased, and a man named Troy drove to a house owned by an individual named Tom. Upon arriving, appellant told the deceased to stay in the car. Appellant went to the house next door and got a gun. Appellant said the reason he needed the gun is because he believed the deceased had some information about a snitch that was giving appellant trouble. Appellant approached the car again and told the deceased to get out. When the deceased did not immediately get out, appellant showed him the gun and again told him to get out of the car. The deceased continued to question appellant as to what he wanted. Appellant stated that he again told the deceased to get out of the car. At that point, appellant squeezed his fist and the gun went off. Appellant left the car and went back to the house where he had originally gotten the gun. He placed the gun in a tool box and changed shirts so that if someone had seen appellant his appearance would be changed in some way. Appellant stated that upon arriving back at the car, he found the deceased stumbling around. Appellant dragged the deceased into the garage and then went into the house to shower. Upon returning, appellant found the deceased had died.

Appellant next returned to Tom's house telling Tom that he had shot the deceased. Appellant went back to the house where he had left the deceased. He wrapped the deceased in a blanket and then appellant and Tom placed the deceased in the trunk of a car. The two individuals proceeded to drive around and discuss the possibility that anyone might have seen the incident. Appellant stated that they traveled to Crowley looking for some place to bury the deceased. After driving around Crowley for ten to fifteen minutes, they discovered a small bridge which they decided no one would be able to see under. Appellant and Tom flung the body over the bridge. After returning to Tom's house, appellant tried to locate his gun, but was unsuccessful. Appellant called Troy and told him that he had shot the deceased because he was so mad

that the deceased would not get out of the car.

The State called Charles Richmond to testify as to the events that took place on January 3, 1988. He testified that on that date, appellant, also known as "Boo," came to his house requesting permission to bring the deceased inside so that appellant could question the deceased. Richmond testified that appellant got a gun from the bedroom and went outside. He saw appellant holding a gun on the deceased who was sitting inside a car. He further stated that appellant told the deceased to get out of the car or he would shoot him. Richmond told appellant not to shoot the deceased out in the street because they did not need the problems. Richmond said that after the gun went off, appellant appeared to be somewhat surprised. Richmond went on to testify that appellant then stated: "See, I told you I'd shoot you."

The deceased's body was discovered on January 17, 1988. The sheriff's office learned through an anonymous tip that an individual named "Boo" was a possible suspect. Appellant was interviewed by sheriff's investigators on January 22, 1988. At that time, appellant made his statement. Appellant was subsequently indicted for the offense of murder.

In appellant's first point of error, he contends that the trial court committed error in the charge to the jury. Specifically, appellant says the instructions to the jury should have required the State to prove the absence of recklessness in establishing the offense of murder. Appellant cites us to *Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim.App.1983) as authority for this proposition. We have reviewed *Cobarrubio* and find that it is distinguishable.

*Cobarrubio* involved a defendant charged with the offense of murder. *Id.* at 750. The trial court also charged the jury on the lesser-included offense of voluntary manslaughter. The Court of Criminal Appeals first reviewed the case of *Braudrick v. State*, 572 S.W.2d 709 (Tex.Crim.App. [Panel Op.] 1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979). In *Braudrick*, the court had examined the relationship between murder and voluntary manslaughter and found that sudden passion was in the nature of a defense to murder. The court had gone on to hold that if the influence of sudden passion was raised by the evidence, the burden was on the State to prove the absence of such an influence beyond a reasonable doubt in order to establish a case of murder. *Id.* at 711. After reviewing *Braudrick*, the court found that not only must the burden rest on the State, but also this burden must be placed in the paragraph of the charge applying the law of murder to the facts of the particular case. *Cobarrubio*, 675 S.W.2d at 751. The court stated that since the defensive issue of sudden passion was not found in the paragraph on murder, but only in the voluntary manslaughter paragraph, there existed a decided likelihood that the jury would answer the murder paragraph in the affirmative, without ever having considered the defensive issue of sudden passion. *Id.* at 752.

The jury charge in the present case included: 1) the law of murder, in the abstract; 2) the definitions of "intentionally," "knowingly," and "serious bodily injury"; 3) application of the law of murder to the facts; 4) the law of involuntary manslaughter, in the abstract; 5) the definition of "recklessly"; and 6) application of the law of involuntary manslaughter to the facts. At first glance, the primary distinguishing factor between this case and *Cobarrubio* is that the present case does not involve the issue of the influence of sudden passion.

We must point out that appellant did not object to the jury charge in this case. Absent an objection, error, if any, in the court's charge will only result in reversal if the harm is egregious. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (opinion on reh'g). Before this court must decide whether there is egregious harm however, we must find that there was error. *See id.* at 174.

The unique relationship between murder and voluntary manslaughter is not found with the offenses of murder and involuntary manslaughter. Involuntary manslaughter requires a different culpable

mental state than the offense of murder. *See* TEX.PENAL CODE ANN. § 19.05(a)(1) (Vernon 1989). On the other hand, voluntary manslaughter is akin to the offense of murder as the elements are the same except for the presence of sudden passion. *See* TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). Sudden passion is not a culpable mental state. *Peters v. State,* 669 S.W.2d 127, 129 (Tex.App.—Dallas 1984, pet. ref'd). It is, when raised by the evidence, an implied element of murder. *Id.*

 The danger discussed in *Cobarrubio* is not present in the instant case. We do not find that a jury might convict of murder without considering an element of murder when the jury is charged on the offenses of murder and involuntary manslaughter. *See Peters,* 669 S.W.2d at 129. As a result, we do not find any error in the court's charge.

Appellant's first point of error is overruled.

In appellant's second point of error, he complains that the trial court erred in overruling his motion for new trial based on newly discovered evidence. We will not reach the merits of this point of error because we find that appellant failed to meet the requirements of TEX.R.APP.P. 31.

Appellant was sentenced on June 29, 1989. Appellant filed his first motion for new trial on July 28, 1989. An amended motion for new trial was filed on October 25, 1989. A hearing on the motion was set for November 3, 1989, and held on November 13, 1989. The trial judge signed a written order overruling the appellant's motion for new trial on December 19, 1989.

Appellant's first motion for new trial, filed July 28, 1989, did not state that the grounds for the motion was newly discovered evidence. All the motion alleged was that an investigation was being conducted by counsel concerning matters of perjured testimony. This motion for new trial was overruled by operation of law on September 12, 1990, which was 75 days after sentence was imposed. *See* TEX.R.APP.P. 31(e)(1). After September 12, 1990, the trial court lost its jurisdiction to deal with appellant's motion for new trial. *See* TEX.R.APP.P. 31(e)(1).

Appellant's amended motion for new trial was not filed until October 25, 1989. This was 118 days after sentence was imposed. This amended motion did not meet the time requirements of Rule 31, and was therefore, a nullity. *See Kiser v. State,* 788 S.W.2d 909, 915 (Tex.App.—Dallas 1990, pet. ref'd); TEX.R.APP.P. 31(a)(2). Amended motions that are untimely cannot form the basis for appellate review. *See Kiser,* 788 S.W.2d at 915.

A hearing was held on the appellant's motion for new trial on November 13, 1989, and the trial judge overruled the motion on December 19, 1989. Given the timetable set in motion by appellant's conviction, sentencing and entry of judgment, we find that the trial court was without jurisdiction to decide the motion for new trial. *See Beathard v. State,* 767 S.W.2d 423, 433 (Tex.Crim.App.1989).

Appellant's second point of error is overruled.

As we have overruled all of appellant's points of error, the judgment of the trial court will be affirmed.