**Robert Joseph HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–176 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Jan. 19, 1995.

Decided March 1, 1995.

John D. MacDonald, II, Conroe, for appellant.

Daniel C. Rice, Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was convicted by a jury for having committed the felony offense of Unauthorized Use of a Motor Vehicle. The jury also found nine enhancement paragraphs contained in the indictment to be true and sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of fifty (50) years. Appellant submits four points of error for our consideration, *viz:*

> Point of Error One: The court erred when it denied appellant's Motion For New Trial since appellant received ineffective assistance of counsel because his trial attorney failed to interview witnesses prior to trial who had evidence favorable to appellant.
>
> Point of Error Two: The appellant received ineffective assistance of counsel because his trial attorney failed to research the law regarding "impeachment by evi-

dence of conviction of crime" (TRCE Rule 609) prior to trial, resulting in his failure to object to State's impeachment evidence.

Point of Error Three: The appellant received ineffective assistance of counsel because his trial counsel failed to properly advise him of the State's plea bargain offers.

Point of Error Four: The court erred when it denied the appellant's Motion For New Trial since appellant received ineffective assistance of counsel when his trial counsel failed to make a proper investigation into the State's evidence for proof of the enhancement portion of his indictment.

A complaint of ineffective assistance of counsel may be raised in a motion for new trial. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993). The proper standard for determining claims of ineffective assistance under the Sixth Amendment of the United States Constitution is the standard adopted in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). In *Strickland,* the Supreme Court of the United States adopted a two-pronged analysis for claims of ineffective assistance. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. First, appellant must show that counsel performed deficiently. *Id.* Second, appellant must show that the deficient performance prejudiced the defense. *Id.* Appellant must establish these two prongs by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985).

In the course of attempting to establish the *Strickland* prongs, appellant must additionally rebut the presumption that counsel performed competently. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Appellant can rebut this presumption by showing counsel's actions were unreasonable under prevailing professional norms and were not sound trial strategy. *Id.* Furthermore, the record must support an ineffectiveness claim. *Johnson v. State,* 691 S.W.2d

619, 627 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). When the record contains no evidence to show the reasons for trial counsel's allegedly ineffective acts or omissions, we cannot conclude that counsel performed deficiently. *Jackson,* 877 S.W.2d at 771. A silent record does not require us to speculate on the reasons behind counsel's decisions. *Id.* It must also be remembered that isolated errors alone do not indicate ineffective assistance. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). No Texas court defines the right to effective counsel as the right to error-free counsel. *Hernandez v. State,* 726 S.W.2d 53, 58 (Tex.Crim.App. 1986). Lastly, all of the above standards are applied by examining, without hindsight, the totality of the representation. *Strickland,* 466 U.S. at 688–689, 104 S.Ct. at 2064–2065, 80 L.Ed.2d at 694; *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986).

In addition to the trial record, we have before us in the instant case the statement of facts from the evidentiary hearing held pursuant to appellant's motion for new trial. An examination of the trial record indicates that the sole issue was whether or not appellant was aware that the vehicle he was driving at the time of his arrest, a 1991 red Ford Escort, was stolen and did not belong to one, Gary Collingsworth, from whom appellant acquired the keys. Both Collingsworth and another State's witness, Michael Fitzgerald, provided testimony that appellant was present at Fitzgerald's residence when Collingsworth told both appellant and Fitzgerald that he (Collingsworth) had stolen the vehicle in question in order to use it as a get-away car following a series of robberies committed by Collingsworth.[1] Both Collingsworth and Fitzgerald further testified that notwithstanding the fact that appellant was told that the vehicle was "hot," appellant volunteered to take the car from Collingsworth. In Fitzgerald's presence, Collingsworth then gave appellant the keys to the red Escort.

1. The jury was made aware that both Collingsworth and Fitzgerald were incarcerated at the time of trial; Collingsworth being in the penitentiary following conviction for the robberies referred to above, and Fitzgerald being held in the Montgomery County Jail awaiting disposition of pending Aggravated Assault charges. The State interviewed both men and both had agreed to voluntarily testify.

Further damaging evidence came in the form of testimony from Montgomery County Sheriff's Office Detectives Dan Norris and Kirk Ervin. Norris testified that he received a tip that the stolen vehicle was being operated in a particular area of Montgomery County. Norris contacted Ervin and both detectives drove to the area in a marked patrol unit. Upon nearing the target area, the detectives spotted the red Escort being driven by appellant. Norris and Ervin followed at a distance while awaiting confirmation from the police dispatcher that the license plate numbers matched that of the stolen vehicle. Upon confirmation of that fact, the detectives attempted to stop the vehicle. Accompanying appellant was a female passenger, later identified as Susan "Legs" Clark. Testimony indicated that appellant attempted to elude the detectives. Finally, upon turning into a parking lot, both appellant and Ms. Clark "bailed out" of the vehicle while it was still moving. Appellant fled on foot pursued by Detective Ervin. Ms. Clark was apprehended at the scene by Detective Norris. Detective Ervin managed to capture appellant as he (appellant) stumbled during the foot pursuit.

Appellant was the sole witness for the defense. He testified that he was riding with a male friend to the store when the friend first stopped at Fitzgerald's house. Appellant testified that he (appellant) knew no one at Fitzgerald's house. Appellant's friend parked his car in front of the house. Shortly thereafter, Collingsworth arrived in the red Escort with Ms. Clark riding as a passenger. Collingsworth parked the red Escort directly behind the vehicle appellant was riding in apparently blocking said vehicle. Appellant stated that he was in a hurry to get to the store and asked Collingsworth to move the red Escort. Appellant testified that Collingsworth gave him the keys to the Escort and told appellant to take it instead of appellant's friend's car as Ms. Clark also wanted to go to the store. Appellant stated that he

agreed to take the Escort not knowing it was a stolen vehicle.

As for the reason for evading the detectives, appellant stated that as he and Ms. Clark pulled into the store parking lot, Ms. Clark pulled a large plastic bag from her purse. Appellant could see the bag contained "marihuana, syringes, God knows what." As they were driving out of the store's parking area, appellant noticed the sheriff's office vehicle behind him. Appellant stated that he knew Ms. Clark possessed contraband and he did not want to go to jail because of her. Appellant also admitted on direct examination by his trial counsel that he had been previously convicted of nine drug related offenses. On cross-examination by the State, appellant testified that his prior criminal history was also a reason he tried to elude the detectives, not because he (appellant) knew the red Escort was stolen.

█ Under his first point of error, appellant contends that he was entitled to a new trial as trial counsel was ineffective for not interviewing certain witnesses prior to trial. The record of the motion for new trial hearing contains the testimony of three witnesses for appellant: Michael Fitzgerald, Joe Hutto, and appellant, himself. Significantly lacking from appellant's new trial evidence, however, is either testimony or affidavit from appellant's trial counsel. The transcript before us does contain an affidavit purportedly from trial counsel, but said affidavit was filed one day after appellant's motion for new trial was overruled by operation of law.[2] *See* TEX. R.APP.P. 31(e)(3). The affidavit, therefore, is not properly before us for our consideration. Absent this rather vital evidence as to the scope and depth of trial counsel's investigation of the case, we can only look to the testimony of Fitzgerald, Hutto, and appellant to provide proof of *Strickland's* two-pronged test, and to overcome the *Jackson* presumption of competent performance.

2. The transcript does contain a signed order from the trial court which, on its face, denotes the fact that appellant's motion had already been overruled by operation of law. Nevertheless, for some unknown reason, the trial court signed the order. A trial court loses jurisdiction to address

a defendant's motion for new trial after said motion is overruled by operation of law 75 days after sentence is imposed. *Hamilton v. State*, 804 S.W.2d 171, 174 (Tex.App.—Fort Worth 1991, pet. ref'd).

■ Fitzgerald testified at the motion for new trial hearing that trial counsel did not interview him prior to appellant's trial. Fitzgerald also stated that during the time period surrounding the offense date, he (Fitzgerald) was intoxicated on drugs and therefore possibly did not give a truly accurate statement to authorities when interviewed approximately eight months later prior to appellant's trial. The trial court questioned Fitzgerald and elicited the fact that, prior to appellant's trial, Fitzgerald had no information helpful to appellant, and that when Fitzgerald testified at the trial his testimony was truthful "[t]o the best of my knowledge." Even if we assume that trial counsel's performance was somehow deficient with regard to Fitzgerald, it is unclear how Fitzgerald's "new" testimony establishes a reasonable probability that the result of the trial would have been different. His credibility had already been impeached before the jury by the fact that he had one prior felony conviction and was in jail awaiting disposition of another pending felony charge. It is clear from the trial record that Collingsworth was the State's key witness with regard to the facts surrounding appellant's acquisition of the red Escort. Fitzgerald testified following Collingsworth and related almost identical facts to the jury. We reiterate the fact that Collingsworth did not testify at the motion for new trial hearing.

■ As for trial counsel's failure to discover Mr. Hutto, it is not completely clear from Hutto's testimony that his presence at Fitzgerald's house on the day in question was known to anyone. Hutto did testify that after learning of the circumstances of appellant's arrest, he (Hutto) did not come forward and report to the authorities that he observed Collingsworth give the keys to the red Escort to appellant without mentioning that the vehicle was stolen. Hutto did admit that he had been convicted on three separate occasions for felony offenses in the state of Georgia and that he and appellant shared a cell in the Montgomery County Jail where, apparently, appellant first learned of Hutto's presence at Fitzgerald's. The most that can be said of Hutto's testimony is that it corroborates appellant's trial testimony. It does not, as appellant contends, refute the testimony of Collingsworth who testified that appellant was informed that the red Escort was stolen the night before appellant was arrested, and that appellant wanted the vehicle anyway. The jury was free to believe Collingsworth's version of the events and not appellant's.

■ Finally, appellant's own testimony at the hearing is mostly conclusory with few new facts of any substance. Typical is the following portion of the direct examination of appellant:

Q. (Appellate Counsel)  And one of the things you're alleging in this Motion for New Trial is that [Trial Counsel], your trial attorney, did not properly represent you in your case?

A. (Appellant)  That's correct.

Q. Could you tell the Court why you felt [Trial Counsel] did not properly represent you?

A. Well, because I told him witnesses that I had, he never addressed any of them. Never talked to any of them, Mr. Collingsworth in the—

Q. Let me just ask you this: Now, you were not in jail for pre-trial; is that correct?

A. No.

Q. So, you were on bond and you were able to talk to [Trial Counsel]?

A. Yes, I was.

Q. Were you also able to—this place where this happened, where these people lived, did you know where these people lived?

A. Yes, I did.

Q. Would you have been able to show [Trial Counsel] where these people live?

A. Yes, I would.

Q. Did he ever ask you, or did he ever take you out to find these people?

A. I gave him the addresses and I told him how to get ahold of these people, but he said he was going to, but he never did.

Q. Okay.  What were some—can you give the Court the names of the people that you wanted him to call as witnesses in this case?

A. Donna May, let's see—Collingsworth, which—

THE COURT: Is it possible for us to generally state what they had to do with the case? Why would they be—

Q. (Appellate Counsel) What did you expect these people to testify to?

A. Well, these people were there that day when Collingsworth give me the keys to the car.

In addition to the names "Donna May" and Collingsworth, appellant mentions Hutto, Fitzgerald, and Ms. Clark as possible witnesses. However, other than from the testimony of Hutto and Fitzgerald, we are provided with no clue as to what any other witnesses would have testified to. In fact, appellate counsel's attempt to secure Donna May as a witness for the hearing was unsuccessful as she was apparently a fugitive from justice and did not want to risk arrest by showing up in court.

Considering all of the above, we find no error by the trial court in denying appellant's motion for new trial as it certainly could be said that appellant's evidence failed to prove both deficient conduct on the part of trial counsel as well as a reasonable probability of a different result, along with additionally failing to rebut the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d at 771. Point of error one is overruled.

■ We also find appellant's second point of error without merit as the record before us indicates that competent trial strategy necessitated an explanation for appellant's flight from the detectives as it is axiomatic that evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn. *Bigby v. State*, 892 S.W.2d 864 (Tex.Crim.App.1994); *Foster v. State*, 779 S.W.2d 845, 859 (Tex.Crim.App. 1989), *cert. denied*, 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990). Recall that appellant testified that the reason he attempted to elude capture by the detectives was that Ms. Clark possessed a significant quantity of contraband *and* that he (appellant) had nine prior drug related convictions

and was therefore fearful of being tied in with said contraband, and not because he (appellant) was aware of the fact that the vehicle he was driving was stolen. Again, the use of appellant's prior convictions before the jury appears to have been sound trial strategy which will not be questioned by the use of hindsight. *Butler v. State*, 716 S.W.2d at 54. Point of error two is overruled.

■ Appellant's third point of error is somewhat misleading in that the record reflects that appellant was indeed informed of the State's plea bargain offer of five years penitentiary time in exchange for a guilty plea. The gist of appellant's contention, contained in his brief, may be summed up as follows:

The Appellant contends that his decision to refuse the five year plea bargain offer was not an informed one, because his trial counsel failed to appraise (sic) him of the fact that Collingsworth and Fitzgerald were going to testify against him, nor did counsel bother to discover and inform the Appellant on the nature of their testimony in time for him to make an informed decision.

Appellant's testimony at the motion for new trial hearing with regard to the plea bargain offer occurred as follows:

Q. (Appellate Counsel) Mr. Howard, what was the offer in this case to you to plea in this case?

A. (Appellant) Five years.

Q. Okay. When did you find out that Mr. Fitzgerald and Mr. Collingsworth were going to testify against you?

A. The day of the trial. The night before the trial.

Q. Okay. Do you know when—do you know when they first came forward?

The Court: Collingsworth and who else?

Appellate Counsel: Fitzgerald.

The Court: Okay.

The Witness: No, and—

Q. (Appellate Counsel) And apparently from what you know, this was the first time that your attorney talked to these people?

A. I am not sure if he even talked to them then.

Q. Okay. Did he cross-examine those individuals?

A. That's the only time that he talked to them that I know of is in cross-examination.

Q. And they did come in and testify against you?

A. Yes, they did.

Q. Do you have an opinion as to whether—now, you were offered five years on this case?

A. Yes.

Q. Do you have an opinion as to whether—if you knew about those people testifying against you and what they were going to say, whether you would have accepted that plea bargain agreement?

A. Well, of course I would have.

Testimony from the assistant district attorney in charge of prosecuting appellant indicates that once the case was placed on the trial docket, presumably after appellant rejected the five year plea bargain offer, all offers were cancelled and no further offers would have been considered by the State. There is no evidence as to when the five year offer was made to appellant, nor what trial counsel had advised appellant, if anything, with regard to said offer. In his summation at the close of the hearing, appellate counsel urges the following:

> And I think as far as the plea bargain was concerned, I think a little research may have caused [Trial Counsel] to push this thing a little harder, especially as low as it was and when you have a case that's enhanced by nine prior enhancements, I think you should look over the enhancements in advance to see if they are all good and that should also go into what you tell your client as to whether he should plea or not to a five-year deal.

A claim of ineffective assistance based upon an allegation that trial counsel failed to *strongly* advise a defendant to accept a plea bargain offer will not entitle said defendant to relief; so long as the defendant was informed of the plea bargain offer trial counsel has no duty to *strongly* advise the defendant to accept the offer. *Jordan v. State*, 852 S.W.2d 689, 692 (Tex.App.—Houston [14th

Dist.] 1993), *aff'd*, 883 S.W.2d 664 (Tex.Crim. App.1994). For appellate review purposes, we reiterate the fact that the record in the instant case contains no evidence from trial counsel as to what information was provided to appellant with regard to the State's plea bargain offer. There is also no showing that, at the time the plea bargain offer was still open, Collingsworth and Fitzgerald were designated witnesses for the State. The record is clear that appellant was made aware of the five year offer. Furthermore, with nine prior felony convictions, it cannot be said that appellant was any "babe in the woods" with regard to plea bargaining practices in the Texas criminal justice system. We therefore again cannot say that the trial court erred in denying the motion for new trial as it can be said that appellant failed in his burden to overcome the strong presumption of reasonable professional assistance by trial counsel. Point of error three is overruled.

■ Appellant's final point of error also has no merit. Appellant makes two presumptions under point of error four. First, appellant presumes that trial counsel failed to make a "proper" investigation of the penitentiary packets that were the bases of the enhancement paragraphs in appellant's indictment. Second, appellant presumes that the penitentiary packets contained legal infirmities rendering them inadmissible at the punishment phase of the trial. Both presumptions are set out in conclusory fashion in appellant's brief and are unsupported by evidence from either trial counsel or the State's attorney, or case or statutory authority. This is a violation of Tex.R.App.P. 74(f). Appellant makes no attempt to show, for example, that any of the prior convictions are void in some way; therefore we must indulge every presumption in favor of regularity of the documents. *See Valdez v. State*, 826 S.W.2d 778, 783 (Tex.App.—Houston [14th Dist.] 1992, no pet.) Because of said briefing deficiencies, point of error four is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.