MARY'S OPINION HEADING 



 

NO. 12-00-00080-CR




IN THE COURT OF APPEALS

 



TWELFTH COURT OF APPEALS DISTRICT




TYLER, TEXAS


RANDY GLENN CLARY,

§

 APPEAL FROM THE FOURTH

APPELLANT



V.

§

 JUDICIAL DISTRICT COURT OF



THE STATE OF TEXAS,

APPELLEE

§

 RUSK COUNTY, TEXAS

 

 A jury convicted Randy Glenn Clary ("Appellant") of driving while intoxicated. This offense was enhanced to a third
degree felony due to the Appellant's two prior driving while intoxicated ("DWI") convictions, and the jury sentenced
Appellant to five years of confinement. Appellant brings ten issues on appeal. We affirm.



Background


 Shortly after seven o'clock p.m. on March 23, 1999, Jesse Stewart ("Stewart"), a trooper with the Texas Department of
Public Safety ("DPS"), was proceeding southbound on Evenside Drive in Henderson. He encountered Appellant
proceeding northbound on Evenside in his 1976 Chevrolet pickup with a defective headlight on the passenger's side. With
the overhead lights on the patrol car, Stewart signaled Appellant to pull over to the side of the street. Stewart walked up to
the 1976 Chevrolet pickup and made contact with Appellant. Stewart testified that at this time he detected alcohol on
Appellant's breath. When Appellant was asked to exit his vehicle, Stewart noticed that his movement was slow and that his
speech was slurred. When Stewart asked Appellant if he had been drinking, he said that he had "drunk" two beers while he
was fishing on a pond in the Laneville area.

 Stewart then asked Appellant to perform field sobriety tests. The first test involved the horizontal gaze nystagmus. After
Appellant failed that test, Stewart then had him do the walk-and-turn test. Stewart noted that Appellant could not stand
heel-to-toe during this test although he attempted it several times. Further, he could not walk heel-to-toe without stepping
off of the line. Stewart testified that he also had Appellant blow into a portable breath test instrument. After this, Stewart
testified that it was his opinion that Appellant was intoxicated and that he placed him under arrest for DWI.

 Stewart then transported Appellant to the Rusk County Jail in Henderson. He testified that he read a form informing
Appellant that his refusal to consent to a breath test could be admissible in a subsequent prosecution and would result in the
automatic suspension of his driver's license. Stewart then stated that he asked Appellant if he consented to the breath test
and that Appellant said that he did. Stewart also read Appellant his Miranda rights prior to asking for the breath sample. 
Stewart then administered a breath test on the DPS's Intoxilyzer 5000 instrument at 7:44 p.m. Two samples were taken of
Appellant's breath and they registered .137 and .132.



Search and Seizure


 In his fifth issue on appeal, Appellant contends that his arrest was the result of an unconstitutional search and seizure under
the Fourth and Fourteenth Amendments to the United States Constitution and article one, section nine of the Texas
Constitution. Under Texas law, driving with only one visible headlight is a traffic violation. See Tex. Transp. Code Ann.
§§ 547.321(a),(b), 547.355(a) (Vernon Supp. 1999). Appellant does not contest the fact that he was driving a vehicle after
dark with his passenger's side headlight not working. Rather, Appellant contends that there was "no probable cause to force
Appellant from his vehicle after he was stopped." The United States Supreme Court specifically dealt with the issue of
whether the Fourth Amendment allowed a law enforcement officer to order a driver stopped for a traffic violation out of his
vehicle in Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977). The Court determined
that it was permissible because to require the driver to get out of the vehicle was a mere inconvenience when balanced
against legitimate concerns for the officer's safety. Id., 434 U.S. at 109, 98 S. Ct. at 333. Here, the initial detention for a
traffic violation and then the subsequent order for Appellant to leave his vehicle were properly carried out by Stewart.

 After the initial lawful detention of Appellant, Stewart smelled alcohol on Appellant's breath and observed his impaired
movements and speech. It was at this juncture in the encounter that Stewart gave Appellant a field sobriety test and had
him blow into a portable breath test instrument. Subjecting a person to a Breathalyzer test is deemed a search under the
Fourth Amendment. Skinner v. Railway Labor Executive's Ass'n, 489 U.S. 602, 618, 109 S. Ct. 1402, 1413, 103 L. Ed.
2d 639 (1989). To determine whether an officer was justified in making such an intrusion upon the freedom of the person
detained, the court must find the officer, in light of his experience and general knowledge, "had specific and articulable
facts which, taken together, with rational inferences from those facts, would reasonably warrant the intrusion on the
freedom of the person stopped for further investigation." Hernandez v. State, 523 S.W.2d 410, 411 (Tex. Crim. App.
1975); Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd). Here, Stewart smelled
alcohol on Appellant's breath and observed the impaired use of his motor skills and slurred speech. He further observed the
failure of Appellant to pass a field sobriety test. Such actions were sufficient to raise a reasonable suspicion of driving
while intoxicated in the mind of a reasonable police officer. See Townsend, 813 S.W.2d at 185. It can reasonably be
argued that one of the functions of patrol officers is to investigate what they perceive to be the dangerous operation of a
motor vehicle on public streets which could cause bodily injury or death to other motorists. Id. We hold that Stewart had
sufficient probable cause to take a breath test of Appellant and then to arrest him.

 Even if we had found that Stewart did not have probable cause to administer the breath test, we would still uphold the trial
court's ruling allowing the introduction of the results of the breath test based on the State's implied consent statute which
provides that a person arrested for an offense alleged to have arisen out of acts committed while operating a motor vehicle
while intoxicated is deemed to have consented to the taking of samples for a breath or blood test. See Tex. Transp. Code
Ann. § 724.011 (Vernon Supp. 1999). Section 724.015 of the Texas Transportation Code mandates that before an officer
may request a breath specimen from a person arrested for driving while intoxicated, the officer must inform the person of
two consequences of refusing to submit a specimen: (1) the refusal may be admissible in a subsequent prosecution, and (2)
the person's driver's license will be automatically suspended. See Tex. Transp. Code Ann. § 724.015 (1),(2) (Vernon Supp.
1999). The record showed this was done by Stewart. Implicit in requiring these warnings is the importance of insuring the
suspect's decision to submit is made freely and with a correct understanding of the actual statutory consequences of refusal. 
Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). A person's consent to a breath test is voluntary if it is not
the result of physical or psychological pressures. Sandoval v. State, 17 S.W.3d 792, 795 (Tex. App.-Austin 2000, no pet.). 
Appellant had the burden of producing evidence to show that his consent had not been voluntary. See id. Appellant failed
to meet this burden. Because Appellant has failed to show that his consent was not voluntary, none of his rights were
violated. See Hogue v. State, 752 S.W.2d 585, 589 (Tex. App.-Tyler 1987, writ ref'd). Appellant's issue five is overruled.



Arraignment


 In his first issue, Appellant contends that his arraignment was void because he had not been served with a certified copy of
the indictment when he waived formal arraignment. The record before us shows that Appellant signed a document entitled
"Waiver by Defendant of Formal Arraignment" with a file date of May 19, 1999. In this document, Appellant states that he
is aware of the charges against him, that his name is spelled correctly, that he is entering a plea of "not guilty" to the
charges in the indictment and requests a trial by jury. However, Appellant crossed out the statement in this document
which stated "that he has received a copy of the indictment at least two days prior to this hearing." Further, the record
shows that at the beginning of the Appellant's jury trial on February 23, 2000, he entered a plea of "not guilty" to the
indictment after it was read aloud to the jury.

 The purpose of arraignment is to determine the identity and plea of the person charged. Richardson v. State, 508 S.W.2d
380, 381 (Tex. Crim. App. 1974). When an appellant, represented by counsel, enters his plea to the indictment, he waives
his right to arraignment. Id.; see Mulder v. State, 707 S.W.2d 908, 917 (Tex. Crim. App. 1986). In the case before us, the
purpose of the arraignment was fulfilled and Appellant has failed to show any error. Appellant's issue one is overruled.



Ineffective Assistance of Counsel-Pre-Trial Attorney


 In his second issue, Appellant contends that the attorney who represented him from May 14, 1999, through January 7,
2000, provided ineffective assistance of counsel because he filed two motions for continuance. The first motion for
continuance was filed on May 14, 1999, and stated that the attorney did not have sufficient time to prepare for trial as he
had only been appointed that day to represent Appellant. The second motion for continuance was filed on July 23, 1999,
and stated that counsel was unable to go forward with a trial because Appellant had been bench warranted to Nacogdoches
County only a few days after May 14, 1999, and because he remained incarcerated there, they had been unable to meet to
prepare for trial.

 To show ineffective assistance of counsel, an appellant must demonstrate (1) his trial counsel's performance was deficient
because it fell below an objective standard of reasonableness, and (2) there was a reasonable probability that, but for
counsel's errors, the results of the proceeding would have differed. Strickland v. Washington, 466 U.S. 668, 687, 104 S.
Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); Rodriguez v. State, 899 S.W.2d 658, 664 (Tex. Crim. App. 1995). "Whether the
Stricklandstandard has been met is to be judged by the 'totality of the representation,' rather than by isolated acts or
omissions of trial counsel and the test is applied at the time of trial. The burden of proving ineffectiveness rests upon the
defendant by a preponderance of the evidence." Rodriguez, 899 S.W.2d at 665. Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. McFarland v.
State, 928 S.W.2d 482 (Tex. Crim. App. 1996); Ex Parte Cruz, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987). "Failure to
make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." 
Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. The review of counsel's representation is highly deferential; we indulge a
strong presumption that counsel's conduct falls within a wide range of reasonable representation. Id., 466 U.S. at 689, 104
S. Ct. at 2065.

 In reviewing the record, we find that Appellant's pre-trial counsel's reasons for filing the two motions for continuance were
reasonable. He had just been appointed Appellant's counsel when the first motion was filed, and he needed time to meet
with Appellant to prepare Appellant's defense at trial. The second motion was filed because Appellant had been in a jail in
another county for nearly the entire two-month period that counsel had been representing Appellant and he had been unable
to meet with him to prepare for trial.

 Additionally, Appellant complains that his pre-trial counsel was prejudiced against him because he had worked for the
Rusk County District Attorney's Office from 1980 to 1987. Appellant alleges that his counsel had participated in the
prosecution of a prior DWI case against him. The record shows that counsel told the court that he had not been involved in
any previous DWI prosecutions against Appellant. Thus, we have nothing in the record that establishes the required
showing of prejudice. SeeStrickland, 466 U.S. at 700, 104 S. Ct. at 2069. Appellant's second issue is overruled.



Statutory Preparation Time for Trial


 In his third issue, Appellant contends that his trial counsel was not given the statutorily required ten days to prepare for
trial. "An appointed counsel is entitled to ten days to prepare for a proceeding . . ." Tex. Code Crim. Proc. Ann. art.
1.051(e) (Vernon Supp. 2001). Here, Appellant's trial counsel was appointed to represent him on January 12, 2000. A jury
was selected in Appellant's case on February 14, 2000, and it went to trial on February 23, 2000. Both of these events
occurred more than ten days after Appellant's counsel had been appointed by the court. Appellant's issue three is overruled.



Speedy Trial


 In his fourth issue, Appellant contends that he was denied his constitutional right to a speedy trial. The record shows that
Appellant's indictment was presented on May 3, 1999. His jury trial was conducted on February 23 and 24, 2000, less than
ten months from the date of the indictment.

 The United States Supreme Court, in its seminal case of Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 3d 101,
identified four factors which courts should assess in determining whether a defendant has been deprived of his right to a
speedy trial. These four factors are length of delay, the reason for the delay, the defendant's assertion of his right to a
speedy trial, and prejudice to the defendant. Id., 407 U.S. at 530, 92 S. Ct. at 2192. As we have seen, the length of the
delay was ten months. The record shows that one reason for the delay was Appellant's incarceration in a neighboring
county and in the Institutional Division of the Texas Department of Criminal Justice between the time of his indictment and
trial. The record further shows that Appellant did not assert his right to a speedy trial until January 14, 2000. Appellant's
trial concluded on February 24, 2000. The fourth factor of prejudice to the defendant is divided into three interests, which
are: (1) to prevent oppressive pre-trial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit
the possibility that the defense will be impaired. Id., 407 U.S. at 532, 92 S. Ct. at 2193. Appellant has raised none of these
three interests in his brief which would have prejudiced his defense.

 None of the four factors in Barker appear from the record before us to apply to Appellant. Any delay in Appellant's trial
appears to have been a result of his incarceration for other offenses. Further, with regard to timeliness of asserting his right
to a speedy trial, his jury trial was completed within six weeks from the date on which he first asserted this right. Finally,
Appellant asserted no interest which might have established prejudice. Applying the Barker balancing test, we therefore
hold that Appellant's right to a speedy trial was not violated. Appellant's fourth issue is overruled.



Motion to Recuse Trial Judge


 In his sixth issue, Appellant contends that the trial court erred in refusing to allow his motion for a recusal. "At least ten
days prior to the date set for trial or other hearing in any court, other than the supreme court, the court of criminal appeals,
or the court of appeals, any party may file with the clerk of the court a motion stating grounds why the judge before whom
the case is pending should not sit in the case." Tex. R. Civ. P. 18a(a). The record reflects that Appellant's motion to recuse
the trial judge in his jury trial was filed on February 23, 2000. The jury had been selected on February 14, 2000, and the
trial was scheduled to begin on February 23, 2000. When a recusal motion is filed, the trial judge against whom the motion
is directed may properly make an initial determination of whether the recusal motion is in compliance with the rule
governing recusal or disqualification of judges. Acosta v. State, 972 S.W.2d 93, 95 (Tex. App.-Texarkana 1998, no pet.);
Sanchez v. State, 926 S.W.2d 391, 394 (Tex. App.-El Paso 1996, pet. ref'd). A trial judge should never rule on the merits
of a recusal motion involving that trial judge, but the trial judge can determine if the motion meets the minimum
requirements of form set in rule 18a. Acosta, 972 S.W.2d at 95. In this matter, it is apparent from the record that
Appellant's motion to recuse failed to meet the minimum requirements of rule 18a when it was filed the same day the jury
trial was to begin. Appellant's issue six is overruled.



Admissibility of Breath Test


 In his eighth issue, Appellant contends that the trial court committed error by admitting his intoxilyzer test results into
evidence without proof of the reliability of the scientific theory underlying the Intoxilyzer 5000. We review the trial court's
admission of scientific evidence under an abuse of discretion standard. Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim.
App. 1992). Evidence derived from a scientific theory, to be considered reliable, must satisfy three criteria in any particular
case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the
technique must have been properly applied on the occasion in question. Id. at 573. These criteria apply to intoxilyzer test
results. Henderson v. State, 14 S.W.3d 409, 411 (Tex. App.-Austin 2000, no pet.).

 By statute, when a defendant is being prosecuted for driving while intoxicated, the result of a breath test for alcohol
concentration is admissible at trial. See Tex. Transp. Code Ann. § 724.064 (Vernon Supp. 1994). A legislature has the
authority to determine the reliability of intoxilyzer test results through statutory enactments, and courts are bound to follow
such enactments. See Scherl v. State, 7 S.W.3d 650, 652-53 (Tex. App.-Texarkana 1999, pet. ref'd). Therefore, with
regard to intoxilyzer results, the only open issue for the trial court to address under Kelly is whether the technique (the third
criteria) was properly applied on the occasion in question. Henderson, 14 S.W.3d at 411.

 As we have seen, Appellant's intoxilyzer test was administered by Stewart. Stewart's technical supervisor at the time of the
test was Rex Swords, who had prepared the reference sample used by Stewart to determine that the machine was
functioning properly at the time Appellant was tested. Swords had examined the Intoxilyzer 5000 at issue in this case on
February 25, 1999. He had prepared a fresh reference solution on that same date. His examination showed that the
machine was functioning properly. Swords then examined the machine on March 24, 1999, and again determined that it
was functioning properly. Based on this, Swords opinion was that the Intoxilyzer 5000 was functioning properly when
Appellant's breath was tested by Stewart on March 23, 1999. We hold that Swords' testimony was clear and convincing
evidence that the intoxilyzer technique was applied properly in testing Appellant's breath sample. Kelly, 824 S.W.2d at
573. Appellant's issue eight is overruled.



Ineffective Assistance of Trial Counsel


 In his ninth issue, Appellant contends that his trial counsel was ineffective. As we have discussed in Appellant's second
issue above, we use the Strickland standard to determine whether a criminal defendant at trial has suffered from ineffective
assistance of counsel. As stated above, we indulge a strong presumption that trial counsel offered reasonable representation
during a trial. Appellant can rebut this presumption by showing (1) his attorney's representation was unreasonable under
prevailing professional norms, and (2) the challenged action was not sound trial strategy. SeeJackson v. State, 877 S.W.2d
768, 771 (Tex. Crim. App. 1994); Howard v. State, 894 S.W.2d 104, 106 (Tex. App.-Beaumont 1995, pet. ref'd). We do
not inquire into trial strategy unless no possible basis exists in strategy or tactics for trial counsel's action. Johnson v.
State, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981); Weeks v. State, 894 S.W.2d 390, 391 (Tex. App.-Dallas 1994, no
pet.). In order to meet the first prong of the Strickland test, Appellant must not only specifically identify the deficiencies in
counsel's performance, but must, in those cases where an objection would be necessary, also identify the specific objection
which should have been made and provide authority and support of his argument that the objection would have been
meritorious. Valdez-Fuerte v. State, 892 S.W.2d 103, 112 (Tex. App.-San Antonio 1994, no pet.) (citing Simms v. State,
848 S.W.2d 754, 758 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd)). When the record contains no evidence of the
reasoning behind trial counsel's action, we cannot conclude counsel's performance was deficient. See Jackson, 877 S.W.2d
at 771-72. A silent record does not require an appellate court to speculate on the reason for trial counsel's decisions. A trial
record is generally insufficient to address claims of ineffective assistance of counsel in light of the strong presumption that
trial counsel's conduct falls within the wide range of reasonable professional assistance.

 Appellant claims that his trial counsel did not object to evidence during voir dire. In reviewing the record, we find that no
evidence was presented during voir dire. Appellant appears to be objecting to statements made by the prosecution stating
facts which were later part of the testimony received into evidence. There is no error shown by the Appellant in this
instance.

 Appellant next complains that his trial counsel was ineffective for not objecting to being put to trial without having
adequate time to research and prepare for trial. Appellant cites the cases of Steward v. State, 422 S.W.2d 733 (Tex. Crim.
App. 1968) and Clabon v. State, 672 S.W.2d 881 (Tex. App.-Dallas 1984, pet ref'd) as his authority for this contention. 
However, those two cases involve facts where trial counsel had been put to trial within ten days. As discussed above, that
would violate article 1.051 of the Texas Code of Criminal Procedure. In the case before us, Appellant's trial counsel had
forty-two days to prepare for trial. This forty-two day period arose out of Appellant's motion for speedy trial. Appellant
now complains about scheduling a trial six weeks after his speedy trial motion by contending that his counsel did not have
adequate time to prepare for trial. However, we find nothing in the record to indicate that trial counsel could not adequately
prepare for Appellant's jury trial in this five-week period and therefore cannot determine that this caused ineffective
assistance of counsel. 

 Next, Appellant contends that his trial counsel "left him in the dark" as to damaging evidence which the State intended to
offer during his jury trial. Again, there is no record before us as to what was discussed and what happened between
Appellant and his attorney. We will not speculate on what was discussed between Appellant and his trial counsel. See
Jackson, 877 S.W.2d at 771-72.

 Other instances where Appellant alleges his counsel failed to provide effective representation include: (1) addressing
issues raised in motions by his pre-trial counsel, (2) never citing case law for the objections raised during trial, (3) not
raising the issue of illegal search and seizure, (4) failing to properly cross-examine the State's witnesses, (5) failure to
request an expert witness to testify on behalf of Appellant. The record does not contain any evidence regarding counsel's
action in any of these instances. A silent record does not require us to speculate on the reason for trial counsel's decision.
Ryan v. State, 937 S.W.2d 93, 98 (Tex. App.-Beaumont 1996, pet. ref'd). Further, there could have been a possible
strategy or basis for each of these decisions. Appellant's ninth issue is overruled.



Credit for Jail Time


 In his seventh issue, Appellant contends that the trial court did not give him credit for all of the time which he had spent in
jail after his arrest on the DWI charge in Rusk County. Appellant was entitled to a credit on his sentence for all the time he
spent in the Rusk County Jail from the time of his arrest on March 23, 1999 until the time of his sentence on February 24,
2000. See Tex. Code Crim. Proc. Ann. art. 42.03 § 2(a) (Vernon Supp. 2000). The record before us shows that after
Appellant was arrested on March 23, 1999, that he made bond in the case on March 25, 1999. Appellant then contends that
he was not given credit for the time served in jail from May 7, 1999 until February 24, 2000. The record before us does not
show that he served any further time in jail for the DWI charge in Rusk County. The record does show that he was in jail in
Nacogdoches County and with the Institutional Division of the Texas Department of Criminal Justice. While Appellant
was entitled to credit for all time he had spent in jail for the DWI charge in Rusk County, he was not entitled to credit for
time he had spent in jail in other jurisdictions unless he had been placed on a detainer or hold by Rusk County. See Nixon
v. State, 572 S.W.2d 699, 701 (Tex. Crim. App. 1978). The record before us shows that no such detainer or hold was
lodged against Appellant following his being bonded out of the Rusk County Jail on March 25, 1999. Only the judge of the
court in which the defendant was convicted shall compute credit for the time the defendant spent in jail in said cause from
the time of his arrest and confinement until his sentence by the trial court. Ex parte Harvey, 846 S.W.2d 328, 329 (Tex.
Crim. App. 1993). Nothing in the record before us shows that the trial judge improperly computed the Appellant's credit
for time spent in the Rusk County Jail on the DWI charge against him. Appellant's issue seven is overruled.



Enhancement of DWI Offense


 In his tenth issue, Appellant contends that he should have only been charged and convicted of a misdemeanor offense
under section 49.04(a),(b) of the penal code which states:



 


 A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.


 


 Except as provided by Subsection (c) and Section 49.09, an offense under this section is a Class B misdemeanor, with a
minimum term of confinement of 72 hours.






Tex. Pen. Code Ann. § 49.04(a),(b) (Vernon Supp. 2000).

 He contends that it was improper to sentence him to a felony offense under section 49.09(b),(c) of the penal code which
state in relevant part:



 


 An offense under Section 49.04, 49.05, 49.06, or 49.065 is a felony of the third degree if it is shown on the trial of the
offense that the person has previously been convicted:




. . .



 


 
 two times of any other offense relating to the operating of a motor vehicle while intoxicated, operating an aircraft
while intoxicated, . . .


 


 


 For the purposes of this section:




 


 
 "Offense relating to the operating of a motor vehicle while intoxicated" means:


 


 

 


 an offense under Section 49.04;




. . .



Tex. Pen. Code Ann. § 49.09(b),(c)(1)(A) (Vernon Supp. 2000).

 Appellant bases this contention on the fact that his two previous convictions for DWI were in 1991 and 1992. He contends
that because the relevant portions of section 49.09 of the penal code did not go into effect until after his two previous DWI
offenses that they do not count toward an enhancement of the Rusk County DWI into a third degree felony. However, in
reviewing section 49.09 of the Texas Penal Code, we find no limitation as to the date of previous DWI offenses which can
be used to enhance an offense under section 49.04 of the Texas Penal Code. In fact, it specifically states that DWI offenses
committed prior to September 1, 1994, can be considered by the trial court. See Tex. Pen. Code Ann. § 49.09(c)(1)(E)
(Vernon Supp. 2000). The trial court properly used the DWI convictions in 1991 and 1992 as elements in enhancing the
Appellant's DWI conviction in Rusk County to a third degree felony. Appellant's issue ten is overruled.

 The judgment of the trial court is affirmed.





 JIM WORTHEN 

 Justice



 

Opinion delivered November 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.





























































(DO NOT PUBLISH)