Affirmed and Memorandum Opinion filed December 23, 2003









Affirmed
and Memorandum Opinion filed December 23, 2003.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01304-CR

____________

 

LYNNE LEE WEISER, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 889098

 



 

M E M O R A N D U M  O
P I N I O N








Appellant Lynne Lee Weiser was
convicted by a jury of possession with intent to deliver a controlled
substance, methamphetamine, weighing at least 400 grams.  The trial court assessed appellant=s punishment at 45 years= imprisonment in the Texas
Department of Criminal Justice, Institutional Division, and a $1,000.00 fine,
and made an affirmative finding that appellant used or exhibited a deadly
weapon during the commission of the offense. 
In three points of error, appellant asserts (1) the evidence is legally
and factually insufficient to support a conviction for possession with intent
to deliver a controlled substance; (2) the evidence is legally and factually
insufficient to support the trial court=s affirmative finding that
appellant used or exhibited a deadly weapon during the commission of the
offense; and (3) appellant received ineffective assistance of counsel during
trial.

Relevant Factual Background

On September 25, 2001, Officer Robert Clark, a Harris County
Sheriff=s deputy and methamphetamine
specialist, engaged in a Aknock and talk@ session with appellant after
receiving a tip that she was operating a methamphetamine lab in her trailer at
8852 Congo Lake in Harris County. 
Officer Clark, along with Deputies Peterson and Patburg,
approached the front door of appellant=s trailer.  Deputy Gary Worley went around to the back of
the trailer to detain anyone who attempted to flee.  From that vantage point, deputy Worley
observed someone shove a red cooler through a window of the trailer.  A man in a wheelchair answered Officer Clark=s knock and called for
appellant.  A few moments later,
appellant came to the door and gave her written consent for the officers to
search the trailer.  According to Officer
Clark, she gave that consent after some initial hesitation and after talking to
Officer Clark for several minutes.  After
removing a fourteen-year old boy from the premises, Officer Clark and the
deputies began a cursory search. 
Appellant does not dispute that she resided at the trailer.  

The search revealed what appeared to Officer Clark to be a
clandestine methamphetamine lab.  The
following is a summary of the evidence found during a more thorough search
conducted with a DEA agent present. 

$                  
In the
master bathroom, they found a garden sprayer, Pyrex bowl, small exhaust fan
sitting on a table in the shower and pointing to a window, 83 grams of red
phosphorous in a shaving kit on the floor near the garden sprayer, a pickle jar
containing what appeared to be pill binder, and a two-liter Coke bottle with a
black plastic cross on it, indicating to Officer Clark that the bottle
contained acid.

$                  
In the
laundry room, the officers found several mason jars containing what appeared to
be pseudoephedrine being processed in a milky liquid,
a two-liter bottle containing what appeared to be methamphetamine separating
from a liquid, a gallon of muriatic acid, a gallon of
sulfuric acid, two jars with milky liquid and white sediment concealed by
clothes and of a type commonly encountered when separating ephedrine to make
methamphetamine.








$                  
In the
trash can and among other trash in the trailer=s backyard, the officers found
denatured alcohol, three or four cans of Gun Scrubber, seven open and empty
24-count packages of pseudoephedrine pills, a braided
hose stained from red phosphorous, coffee filters stained from red phosphorous,
three large, empty containers normally used to store iodine, and an empty
gallon container of muriatic acid.

$                  
The red
cooler thrown from the trailer appeared to be a portable methamphetamine lab,
contained all ingredients necessary to manufacture methamphetamine, except ephedrine
or pseudoephedrine, and also included a 20 oz. jar
containing what appeared to be liquid methamphetamine.  The red cooler had AAndy Griffin@ handwritten on its exterior.

$                  
Two
Erlenmeyer flasks, which are illegal to possess without a DPS permit, were
found in the master bathroom under the vanity.

$                  
The
officers also found six hunting rifles in a locked safe in the master bedroom=s closet and a loaded pistol
between the mattress and box springs in the master bedroom, near the master
bathroom with the various materials identified above.  An empty gallon jar with residue was next to
the bed in the master bedroom. 

In addition to the foregoing, Officer Clark testified that
red phosphorous has no legal uses, is a volatile and explosive substance
necessary to cook methamphetamine, and can be obtained on the black market for
about $1,000 per pound.  Officer Clark
testified the garden sprayer, Pyrex bowl, and exhaust fan in the shower are
items commonly used to make methamphetamine and purge the area of toxic
fumes.  Moreover, Officer Clark testified
that all of the other items found in the shower, in the laundry room, and in
the trash are precursor ingredients commonly used to manufacture
methamphetamine.  Deputy Worley testified
that after appellant was arrested and transported to jail, she told him that
she was holding the methamphetamine for a friend named Andy, and had been doing
methamphetamine, but denied the methamphetamine found in her trailer that day
was hers.  Deputy Worley observed recent
injection marks on appellant=s left elbow, suggestive of
recent methamphetamine consumption.








Harris County Medical Examiner=s forensic chemist James
Jackson testified that he analyzed and identified the following among the items
confiscated from the trailer submitted to him for testing: 48 grams of pseudoephedrine, approximately 69 grams of red phosphorous,
a two-liter bottle containing 813.8 grams of methamphetamine (including
adulterants and dilutants), and a bottle containing
212.4 grams of methamphetamine (including adulterants and dilutants).  Jackson totaled 1026.2 grams of controlled
substance in the two bottles, and analyzed another 1.42 grams of
methamphetamine powder found in appellant=s trailer.  

Standard of Review

Appellant challenges the sufficiency of the evidence to
support the jury=s guilty verdict and to support
the trial court=s affirmative finding that
appellant used or exhibited a deadly weapon during the commission of the offense.  In conducting a legal sufficiency review, a
reviewing court does not ask itself whether it believes that the evidence at
the trial established guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979).  Rather, we view the evidence in
the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense
beyond a reasonable doubt.  Id.; Cardenas
v. State, 30 S.W.3d 384, 389 (Tex. Crim. App.
2000).  The jury is the exclusive judge
of the credibility of witnesses and the weight to be given their
testimony.  Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998).  Likewise, reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Id. 
A jury may choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  The reviewing court will examine the entire
body of evidence; if any evidence establishes guilt beyond a reasonable doubt,
and the fact finder believes that evidence, the appellate court may not reverse
the fact finder=s verdict on grounds of legal
insufficiency.  See Jackson, 443
U.S. at 307.








In reviewing factual sufficiency, we do not view the
evidence Ain the light most favorable to
the prosecution.@  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  Instead, we ask Awhether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury=s determination, or, the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.@  Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).  We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Wesbrook v. State, 29 S.W.3d 103,
112 (Tex. Crim. App. 2000).

Sufficiency
of Evidence to Support Conviction

We first address appellant=s claim that the evidence is
legally and factually insufficient to support her conviction for possession of
methamphetamine with intent to deliver. 
A person commits an offense if she intentionally or knowingly possesses,
with the intent to deliver, methamphetamine in an amount weighing at least 400
grams by aggregate weight, including any adulterants or dilutants.  Tex.
Health & Safety Code Ann. '' 481.102(6), 481.112(a),
481.112(f) (Vernon 2003).  To establish
the unlawful possession of a controlled substance, the State must prove that
the accused (1) exercised actual care, control, or custody over the substance,
and (2) was conscious of her connection with it and knew what it was.  Id. '' 481.115(a), 481.115(f);
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995).  Evidence which affirmatively
links the accused to the contraband suffices for proof that she possessed it
knowingly.  Id.  This evidence can be either direct or
circumstantial.  Id.  In either case, the evidence must establish
that the accused=s connection with the drugs was
more than just fortuitous.  Id.  However, the evidence need not be so strong
that it excludes every other outstanding reasonable hypothesis except the
defendant=s guilt.  Id. at 748.  








When the accused is not in exclusive possession of the place
where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional
independent facts and circumstances which affirmatively link the accused to the
contraband.  Guiton
v. State, 742 S.W.2d 5, 8 (Tex. Crim. App.
1987).  Mere presence at a place where
contraband is being used or possessed does not justify a finding of joint
possession.  Nunn v. State, 640
S.W.2d 304, 305 (Tex. Crim. App. 1982).  Among such additional facts that can
establish the affirmative link are (1) appellant=s presence when the contraband
was discovered; (2) whether the contraband was in plain view; (3) appellant=s proximity to and
accessibility of the narcotic; (4) whether appellant was under the influence of
narcotics when arrested; (5) whether appellant possessed other contraband when
arrested; (6) whether appellant made incriminating statements when arrested;
(7) whether appellant attempted to flee; (8) whether appellant made furtive
gestures; (9) whether there was an odor from the contraband; (10) whether other
contraband or drug paraphernalia was present; (11) whether the place where the
drugs were found was enclosed; and (12) whether appellant owned or had the
right to possess the place where the drugs were found.  Hyett v.
State, 58 S.W.3d 826, 830 (Tex. App.CHouston [14th Dist.] 2001, pet.
ref=d).  Notwithstanding the foregoing laundry list,
there is no set formula of facts that necessitate a finding of affirmative
links sufficient to support an inference of knowing possession.  Porter v. State, 873 S.W.2d 729, 732
(Tex. App.CDallas 1994, pet. ref=d).  Affirmative links are established by a
totality of the circumstances.  See
Sosa v. State, 845 S.W.2d 479, 483B84 (Tex. App.CHouston [1st Dist.] 1993, pet.
ref=d) (finding totality of
circumstances was of such a character that the jury reasonably could conclude
the defendant was aware of the contraband and exercised control over it).  The number of factors is not as important as
the logical force the factors have in establishing the elements of the
offense.  See Jones v. State, 963
S.W.2d 826, 830 (Tex. App.CTexarkana 1998, pet. ref=d).  Additionally, some cases consider the
quantity of the contraband as an affirmative link.  See, e.g., Carvajal
v. State, 529 S.W.2d 517, 520 (Tex. Crim. App.
1975), cert. denied, 424 U.S. 926 (1976); Washington v. State,
902 S.W.2d 649, 652 (Tex. App.CHouston [14th Dist.] 1995, pet.
ref=d).    








The record in this case reflects that appellant owned and
resided at the trailer where Officer Clark and other deputies found not only
methamphetamine in an amount in excess of 1000 grams (including adulterants and
dilutants) but also all of the paraphernalia and
equipment necessary to manufacture methamphetamine.  Many of the items were found in plain
view.  Appellant was present in the
trailer at the time the items were found. 
Test results concluded that some of the substances found by Officer
Clark were in fact methamphetamine. 
Appellant=s voluntary statements to
Deputy Worley after her arrest further support her connection to the methamphetamine.  Although appellant testified that another
gentleman was staying with her and her husband in the trailer, she did not
claim that he was the source of the methamphetamine or paraphernalia found
there. She instead testified that the methamphetamine and its source materials
belonged to Andy Griffin, a neighbor, and she asserts that her cooperation with
police supports her legal and factual insufficiency claims.  Any conflict in the testimony, however, is a
conflict for the jury to resolve.  Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.
2000).  As the trier
of fact, the jury was the sole judge of the credibility of witnesses and was
free to accept or reject all or part of the witnesses= testimony.  Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996).  After viewing the evidence in the light most
favorable to the prosecution, we believe that a rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.[1]

Appellant also claims the evidence is factually insufficient
to support her conviction.  In conducting
a factual sufficiency review, A[a]ppellate
courts should only exercise their fact jurisdiction to prevent a manifestly
unjust result; . . . courts >are not free to reweigh the
evidence and set aside a jury verdict merely because the judges feel that a
different result is more reasonable.=@ Clewis, 922 S.W.2d at 135. 

 We do not find
evidence in the record that greatly outweighs the evidence supporting the trial
court=s judgment.  For the reasons discussed above, the jury=s decision was not so contrary
to the weight of the evidence as to be clearly wrong and manifestly
unjust.  We conclude the State presented
legally and factually sufficient evidence to the jury to show that appellant
was in possession of methamphetamine with intent to deliver.  We overrule appellant=s second point of error.

 

 








Deadly Weapon Finding

In her first point of error, appellant contends that the
evidence is legally and factually insufficient to support the trial court=s affirmative finding that
appellant used or exhibited a deadly weapon during the commission of the
offense for which she was convicted.  An
affirmative finding of the use of a deadly weapon may be made when the State
establishes  that a deadly weapon was
used or exhibited during the commission of a felony offense or the flight therefrom and that the defendant used or exhibited the
deadly weapon or was a party to the offense and knew that a deadly weapon would
be used or exhibited.  Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (Vernon Supp.
2002).  Furthermore, as the trier of fact at the punishment stage, a trial court has
the authority to make an affirmative finding as to the use or exhibition of a
deadly weapon even if a jury has not answered a special issue.  Ross v. State, 59 S.W.3d 754, 756
(Tex. App.CAustin 2001, pet. ref=d); Adams v. State, 40
S.W.3d 142, 146 (Tex. App.CHouston [14th Dist.] 2000, pet.
ref=d).  In addressing this point of error, we employ
the same standards of review discussed above. 









In Patterson v. State, the Court of Criminal Appeals
explained the difference between Ause@ and Aexhibit.@  769 S.W.2d 938, 941 (Tex. Crim.
App. 1989).  A>[U]sed
. . . during the commission of a felony offense= refers certainly to the
wielding of a firearm with effect, but it extends as well to any employment of
a deadly weapon, even its simple possession, if such possession
facilitates the associated felony.@  Id. (emphasis added).  In Patterson, the defendant was
convicted of illegally possessing methamphetamine and using or exhibiting a
deadly weapon during the commission of the offense.  769 S.W.2d at 939.  When the police kicked in the door, Patterson
was sitting on a sofa, and a bag containing methamphetamine, a wallet with $905
in cash, and a Agun boot@ were on an end table located
next to Patterson.  Id.  Patterson raised his hands when the police
entered and told them that he had a gun between his leg and the end of the
sofa.  Id.  Despite Patterson=s argument that the gun=s purpose was to protect his
money, not the methamphetamine, the Court of Criminal Appeals held that a
rational trier of fact could have found that the
defendant used the firearm during the commission of the felony offense of
possessing the controlled substance, Ain a sense that the firearm
protected and facilitated@ the defendant=s Acare, custody, and management@ of the controlled
substance.  Id. at 942.

In this case, the guns were found in close proximity to the
methamphetamine and paraphernalia for its manufacture.  The loaded pistol was tucked under the
mattress in the master bedroom next to the night table with a jar of residue
identified by Officer Clark as methamphetamine or a by-product from the process
of manufacturing it.  By virtue of being
in the master bedroom, both the loaded pistol and gun safe were near the master
bathroom in which the officers found materials used to manufacture methamphetamine.  Appellant does not dispute that the pistol
and the guns belonged to her or her husband who resided with her.  Officer Clark testified that it is common for
drug dealers to keep weapons and use them to protect themselves, their drugs,
and their money.   Although appellant=s husband testified that he
collects guns and hunts and that the pistol was kept under the mattress for
protection purposes, as we noted above, the jury was the judge of the
credibility of his testimony and was free to reject or accept his
testimony.  See Jones, 944 S.W.2d
at 647.[2]   








Viewing the evidence in a light most favorable to the
verdict, we conclude that a reasonable trier of fact
could have found that appellant used or exhibited a firearm during the
underlying felony beyond a reasonable doubt. 
We follow the reasoning of Patterson, and conclude that the
evidence is legally sufficient to justify an affirmative finding that appellant
used or exhibited a deadly weapon during the commission of the offense.  See generally, e.g., Coleman v.
State, 113 S.W.3d 496, 502B03 (Tex. App.CHouston [1st Dist.] 2003, no
pet.) (holding that evidence of guns found in same room as safe containing
controlled substance and money was sufficient to support deadly weapon affirmative
finding); Dimas v. State, 987 S.W.2d
152, 154 (Tex. App.CFort Worth 1999, pet. ref=d) (holding that presence of
assault rifles in same room in garage apartment as drugs and presence of pistol
in defendant=s bedroom, away from drugs,
coupled with testimony of narcotics officer that it is customary for drug
dealers to have firearms and use them to protect themselves, their drugs and
money, was legally sufficient evidence to support deadly weapon affirmative
finding).  For the same reasons, we
conclude the evidence is factually sufficient to support the trial court=s affirmative finding of a
deadly weapon.  We overrule appellant=s first point of error.

Ineffective Assistance of Counsel

In her third point of error, appellant asserts she was denied
effective assistance of counsel because her trial counsel failed to object to
an inadmissible, oral statement taken in violation of appellant=s Fifth Amendment Rights, was
late the first day of trial, failed to make any evidentiary objections during
trial, failed to object to the State=s request for a deadly weapon
finding, and failed to mount a consistent defense during trial, arguing that
some of the items found in her residence were legitimate cleaning items while
also arguing that appellant was unaware the items were in her residence. 

As a preliminary matter, we note that with the exception of
her complaint that trial counsel did not object to a statement given by
appellant while in custody, appellant did not further develop her arguments in
her brief as to why her trial counsel was ineffective on the other asserted
grounds.  Appellant has a duty to cite
specific legal authority and to provide legal argument based upon that authority.  Tex.
R. App. P. 38.1(h); Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). 
Appellant cited no legal authority to support her contention that her
trial counsel was ineffective because he was late for the first day of trial,
failed to make evidentiary objections, failed to object to the State=s request for a deadly weapon
finding, or presented an inconsistent defense. 
Thus, appellant has not preserved anything for review on these points of
error.  See Tex. R. App. P. 38.1(h); Smith v.
State, 683 S.W.2d 393, 410 (Tex. Crim. App. 1984)
(holding that nothing was preserved for appellate review when defendant cited
no authority and presented no argument on issue); Thompson v. State, 915
S.W.3d 897, 906 (Tex. App.CHouston [1st Dist.] 1996, pet.
ref=d) (holding failure to identify
cites to record where trial counsel allegedly did not object resulted in lack
of preservation of claim of ineffective assistance of counsel).








Appellant=s claim that her trial counsel
was ineffective because he failed to object to the introduction of an oral,
custodial statement made by appellant after her arrest also fails.  Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  U.S.
Const. Amend. VI; Tex. Const.
art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 1977).  This right includes the right to reasonably
effective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 686 (1984); Ex parte
Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App.
1997).  To prove ineffective assistance
of counsel, an appellant must show that (1) trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) the result of the proceeding would have been different but for trial
counsel=s deficient performance.  Strickland, 466 U.S. at 688B92; see also, e.g.,
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).  An appellant has the burden
of proving her claim by a preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).  We apply a strong presumption that trial
counsel was competent.  Thompson,
9 S.W.3d at 813.  We presume counsel=s actions and decisions were
reasonably professional and motivated by sound trial strategy.  Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  Appellant has the burden to rebut this
presumption by presenting evidence illustrating why trial counsel did what he
did.  See id.  An appellant usually cannot meet this burden
if the record does not specifically focus on the reasons for trial counsel=s conduct.  Osorio v. State, 994 S.W.2d 249, 253
(Tex. App.CHouston [14th Dist.] 1999, pet.
ref=d).  








In this case, appellant did not file a motion for new trial,
and as a consequence, there was no hearing conducted to develop counsel=s trial strategy.  In the absence of a proper evidentiary record
developed at a hearing on a motion for new trial, it is extremely difficult to
show that trial counsel=s performance was
deficient.  Gibbs v. State, 7
S.W.3d 175, 179 (Tex. App.CHouston [1st Dist.] 1999, pet.
ref=d).  When there is no hearing on a motion for new
trial or if trial counsel does not appear at such a hearing, an affidavit from
trial counsel becomes almost vital to the success of a claim of ineffective
assistance of counsel.  Howard v. State,
894 S.W.2d 104, 107 (Tex. App.CBeaumont 1995, pet. ref=d).  Here, there is no such affidavit in the
appellate record.  To the contrary, the
record is silent as to the reasoning and strategy behind trial counsel=s action or inaction in not
objecting to the admission of evidence of appellant=s oral, custodial
statement.  Appellant has not rebutted
the presumption that her trial counsel made all significant decisions in the
exercise of reasonable professional judgment, and appellant has not
demonstrated in the record that trial counsel rendered ineffective
assistance.  See Thompson, 9
S.W.3d at 814.  We will not speculate
about counsel=s strategic decisions, and
thus, we cannot find appellant=s trial counsel ineffective
based on the asserted grounds.  See
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.CHouston [1st Dist.] 1996, no
pet.) (ADue to lack of evidence in the
record concerning trial counsel=s reasons for conducting voir dire as he did and for not objecting to certain
testimony and argument, we are unable to conclude that trial counsel=s performance was deficient.@).  

Moreover, even if the state of the record permitted us to
address appellant=s specific complaint regarding
counsel=s performance in failing to
object to the oral statement, we would hold that appellant has failed to show
that her trial counsel erred.  Our review
of the record reflects that the statement about which appellant complains was a
voluntary statement.  There is no
evidence in the record that it is the product of interrogation.  Thus, Miranda and its progeny do not
apply.  See, e.g., Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Wicker v. State,
740 S.W.2d 779, 786 (Tex. Crim. App. 1987), cert.
denied, 485 U.S. 938 (1988); Granviel
v. State, 723 S.W.2d 141, 146 (Tex. Crim. App.
1986), cert. denied, 484 U.S. 872 (1987).  We overrule appellant=s third point of error.

Having overruled all of appellant=s points of error, we affirm
the trial court=s judgment.

/s/          Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed December 23, 2003.

Panel
consists of Justices Yates, Hudson, and Fowler.

Do Not
Publish C Tex. R. App. P. 47.2(b).











[1]  Roberson v.
State, 80 S.W.3d 730 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d), cited by appellant for the proposition that the
evidence is legally and factually insufficient to support her conviction in
this case, is distinguishable from this case and does not support appellant=s claim. In Roberson, the appellant was the
driver but not the owner of the vehicle in which cocaine was found and was not
alone in the vehicle, cocaine and cash were found on two other occupants in the
vehicle, and appellant was composed, gave no resistance and did not appear
under the influence of illegal substances, while at least one of the passengers
in the car appeared to be intoxicated or under the influence of drugs.  Id. at 733B34.





[2]  Our holding
does not imply, as appellant suggests, that trial courts should always include
an affirmative finding in a drug case if the defendant also happens to own or
collect guns or hunting rifles.  As with
every case, this is a factual inquiry, and in this case, officers found a
loaded pistol, as well as hunting rifles, in close proximity to the equipment
and methamphetamine or the precursors used to manufacture methamphetamine.