**Darrell STILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 058–84.**

Court of Criminal Appeals of Texas, En Banc.

May 21, 1986.

Clifton L. Holmes, Longview, for appellant.

William L. Ferguson, County Atty. and Richard W. White and Darrell Hyatt, Asst. County Attys., Henderson, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury found appellant guilty of murder and assessed punishment at confinement for 20 years. The Court of Appeals for the Twelfth Supreme Judicial District affirmed the judgment of the trial court. *Still v. State*, 709 S.W.2d 672 (Tex.App.—Tyler 1983). We granted appellant's petition for discretionary review to address his contentions that the trial court erred in refusing to charge the jury on the lesser included offense of criminally negligent homicide and in refusing to charge on temporary insanity induced by voluntary intoxication.

Appellant and the deceased, Karen Fay Still, had been married four months when the shooting took place.[1] Appellant and the deceased spent the afternoon of April 5, 1981, at a barbecue at his father's house. Appellant testified that he drank almost a case of beer and some whiskey during the afternoon and early evening. He said his wife drank wine. They returned to their mobile home at about 5:30–6:00 p.m. Several of appellant's relatives visited with them there until about 7:30 p.m. Appellant testified he then stayed outside the mobile home for about an hour to feed their rabbits. When he went inside, his wife ran toward him into the bathroom. Apparently she was ill from drinking too much wine. She fell onto the floor of the bathroom and vomited. Appellant helped her to her feet, told her to change the sheets on the bed, and cleaned up the bathroom with a towel. He testified that the sheets were kept on a shelf in the closet above the clothes. After hearing his wife fall and scream, appellant went back to the bedroom and saw that she had fallen on the floor, pulling several clothes and hangers off the rack, apparently in an effort to regain her balance. She vomited on herself again and appellant became angry with her.

Appellant testified that he "started cussing about the house, and I lost my head." They argued with each other and appellant picked up a pistol that he kept on the nightstand. He said he played with guns all the time and that as they argued he "was just throwing it around you know, and spinning the cylinder and everything, you know just like I alway (sic) do each night, ..." Appellant said he spun the cylinder and noted there were six bullets, the maximum number, in the pistol. In order to spin the cylinder the safety on the pistol had to be released and the hammer had to be cocked back two notches. To then discharge the pistol the hammer had to be cocked back a third notch.

Appellant testified that he pointed the gun at his wife and shook it at her "[L]ike I was shaking my fist at her you know, but

[1] We borrow liberally from the Court of Appeals' rendition of the facts.

not meaning to hit her, you know, I didn't realize that until it was too late you know." When asked what happened when he pointed the gun at her and shook it, appellant replied:

> Well, I said my God what I (sic) am I doing and about that time I grabbed for the hammer and it slipped from under my thumb and it fired and I threw the gun down, and she was gurgling. I didn't know what to do except to roll her over on her side. I ran and called the Kilgore police, because that's the only number I knew to tell them to hurry to bring the ambulance, and I came back in there and I didn't know what to do. I said God please don't let her die. I washed my hands so I could get a clean pair of her pants. I washed the blood where I had touched her, so I could get a clean pair of pants and put upon her, because I thought I might get her to the hospital someway. I ran back to the phone and told them to please hurry again and that's when they came to the door, and it is all kind of fuzzy after that.

Appellant said he did not intend to pull the trigger and did not intend to shoot his wife. Appellant explained:

A. (Appellant) Well sir, I was trying to uncock the gun, and the hammer slipped from under my thumb and hit the firing pin and went off, as farfetched as it may seem, that is true.

Q. Had that ever happened before, had that gun ever fired that way before?

A. Yes. It had.

Appellant contends that "he did not perceive the risk of the hammer slipping from his thumb 'until it was too late.'" He did not intend to shoot his wife and was shaking the gun "like shaking a fist" and it "went off."

A person commits an offense if he causes the death of an individual by criminal negligence. V.T.C.A. Penal Code, § 19.07. "Criminal Negligence" is defined in V.T.C.A. Penal Code, § 6.03(d):

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The key to criminal negligence is the failure of the actor to perceive the risk. *Lewis v. State*, 529 S.W.2d 550 (Tex.Cr. App.1975). Pertinent to a determination of whether the evidence shows an awareness of the risk that circumstances exist or that the result will occur are factors like a defendant's familiarity with the gun and its potential for injury; a defendant's conduct in handling the gun; how the weapon could be fired; how the weapon was actually fired, i.e., attendant circumstances. See *Thomas v. State*, 699 S.W.2d 845 (Tex.Cr. App.1985).

In *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979) the defendant was involved in an argument and obtained a shotgun from his car. The defendant struggled with several people and the gun discharged killing one with whom the defendant had argued. In concluding that no issue of criminally negligent homicide had been raised showing the required culpability of an unawareness of the risk, this Court noted that the defendant testified he had qualified on the rifle range in the army and knew weapons were dangerous.

See also *Lewis*, supra, wherein this Court held that the trial court did not err in failing to charge the jury on criminally negligent homicide. The defendant in *Lewis*, supra, "shook" a loaded gun at the deceased and it discharged.

Appellant testified he played with guns all the time. He also stated that while he was handling the pistol during the argument with his wife, he cocked the hammer back twice, spun the cylinder and noted the

gun was fully loaded and himself realized the risk of harm in his actions and attempted to uncock the gun.

As the Court of Appeals points out, the evidence shows that appellant, after perceiving the risk involved in pointing a loaded pistol at his wife, continued to point the pistol at her even while he attempted to uncock it.

Appellant also testified that the gun had, on one other occasion, discharged while he attempted to uncock it. Yet, appellant continued to point the gun at his wife while attempting to uncock it. Just because he did not intend the result does not change his awareness and perception of the risk. See *Thomas*, supra, at 850, and *George v. State*, 681 S.W.2d 43 (Tex.Cr.App.1984).

We agree with the Court of Appeals that the evidence shows appellant perceived the risk but consciously disregarded it by continuing to point the pistol at his wife while attempting to uncock it. The evidence does not reflect that appellant was unaware of the risk attendant in his handling of the pistol. The trial court did not err in refusing to charge the jury on criminally negligent homicide. The ground of error is overruled.

Appellant contends the trial court erred in refusing to charge the jury at the punishment stage under V.T.C.A. Penal Code, § 8.04. Sec. 8.04 states:

(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(d) For purposes of this section 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

In *Hart v. State*, 537 S.W.2d 21 (Tex.Cr. App.1976) we held that § 8.04 and § 8.01 should be read together and that for a defendant to avail himself of the mitigation provision of § 8.04, he must, as a result of intoxication, (a) " 'not know his conduct was wrong' or (2) was incapable of conforming his conduct to the requirements of the law he violated.' " *Hart*, supra, at 24.

▪ In the instant case the evidence shows that appellant drank quite a bit of alcoholic beverages during the course of the afternoon. However, his testimony does not indicate anything close to temporary insanity caused by his drinking, even if we assume, arguendo, he was intoxicated. Appellant, describing his awareness and describing the events leading up to the shooting, was clear and concise and showed no hints of temporary insanity. He said that he got angry with his wife and "started cussing about the house and I lost my head." He and his wife continued to argue because he was very angry.

▪ Even if we assume appellant was intoxicated, there is no evidence he did not know his conduct was wrong. The evidence instead shows that appellant fully appreciated the risk in his handling of the gun and the terrible result that followed the shooting. Nor is there evidence that appellant was incapable of conforming his conduct to the requirements of the law he violated. Again, the evidence shows appellant was aware of what he was doing. Nowhere does any evidence reflect any incapacity to conform his conduct to the law due to intoxication.

The Court of Appeals was correct in holding that the evidence did not raise the issue of temporary insanity caused by voluntary intoxication. The ground of error is overruled.

The judgments of the Court of Appeals and of the trial court are affirmed.

CLINTON and TEAGUE, JJ., dissent for reasons given in dissenting opinion in *Thomas v. State*, 699 S.W.2d 845, 855–858 (Tex.Cr.App.1985).

MILLER, J., dissents.