**Moses SMITH, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–91–00008–CR.**

Court of Appeals of Texas,
Tyler.

April 28, 1993.

---

Hunter Brush, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

Before BILL BASS and HOLCOMB, JJ.

HOLCOMB, Justice.

This is an appeal wherein Appellant entered his plea of guilty to the felony offense of burglary of a habitation. The jury found him guilty and assessed punishment at seventy-five (75) years imprisonment. We will affirm.

The evidence, when viewed in the light most favorable to the jury's verdict on punishment, is as follows. Appellant had four previous burglary convictions. Complainant testified that Appellant had appeared at the complainant's door two days prior to the burglary, asking whether a vehicle in the yard was for sale, even though there was no sign on it or any indication that the vehicle might be for sale. Around 2:00 a.m. on the date of the burglary, the complainant and her three-year-old child were in one part of this home when she became aware that someone had broken into the house and was burglarizing it. They then went under a bed, taking the telephone with them, and called 911. She was requested to stay on the line while officers were enroute to answer the call. The officers responding to the call testified that they found items which had been taken stacked outside the house. When they en-

tered the house, officers discovered Appellant and his younger brother carrying a stereo system which was too large for one person to carry. Appellant at first started to run, but stopped when ordered by the police. He had socks on his hands so that he would not leave fingerprints. Further testimony revealed that he had parked his vehicle a distance away from the victim's house he was burglarizing. Appellant and his brother were placed under arrest and charged with burglary.

■ By his first point of error, Appellant complains of the trial court's action in allowing the State to ask Appellant if he had been arrested and charged with a burglary which had not resulted in a conviction. The record reflects that during cross-examination, the State's prosecutor, after questioning Appellant about prior burglary convictions and obtaining an admission that he had been convicted of burglary four times during 1969 and 1970, asked Appellant:

Q: Sir, after that time isn't it true that you were arrested in Dallas and charged with burglary, is that correct?

A: No, I don't think so.

Q: And plead guilty to criminal trespass?

Appellant's attorney objected. During a bench conference, the trial judge asked the State if a conviction had resulted from the Dallas arrest. After the State responded affirmatively, the court allowed him to continue with the following question:

Q: Sir, that was 1976 in Dallas, is that correct?

A: What was this again?

Q: It was a burglary reduced to criminal trespass?

A: No, it was attempted—

Upon another objection by Appellant's attorney, the judge retired the jury. Appellant's objection was overruled since Appellant had been arrested for burglary, even though that charge had later been reduced to criminal trespass. When Appellant was specifically asked whether he had been convicted of criminal trespass in Dallas County in 1976, he responded that he did not know.

After both sides rested, the jury was instructed by the court as follows:

THE COURT: Ladies and gentlemen, I'm going to instruct you to disregard any questions concerning any conviction for—what was it, criminal mischief?

MR. MCCLAIN: *[State's attorney]* Trespass.

THE COURT: Trespass in Dallas County or any conviction for theft or possession of drugs in Smith County. There is no proof to support anything, so you'll disregard the questions and not speculate on the answers.

Appellant argues that although the court instructed the jury to disregard questions concerning criminal trespass in Dallas County, there was no specific instruction given to the jury regarding the arrest for burglary in Dallas County. However, we find that both times the burglary was brought up in front of the jury, it was also mentioned that the charge had been reduced to criminal trespass. Since the burglary and the lesser charge of criminal trespass constituted only one charge, we hold that the trial court did not commit error by instructing the jury simply to disregard any questions concerning a criminal trespass in Dallas County. TEX.CODE CRIM. PROC.ANN. art. 37.07, § 3(a), provides in pertinent part that the "prior criminal record" of a defendant may be offered on the issue of sentencing after a finding of guilty. Article 37.07, sec. 3(a) defines "prior criminal record" as "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Under these circumstances, the instruction to the jury to disregard was sufficient. Appellant's first point of error is overruled.

■ Appellant's second point of error asserts that the trial court erred in denying his request for a charge allowing the jury to consider intoxication in mitigation of punishment. Appellant contends that his consumption of various alcoholic beverages prior to the commission of the burglary should have been included in the charge to

the jury for mitigation purposes. However, we hold that since Appellant's previous drinking did not raise any evidence of temporary insanity, he was not entitled for the jury to be so instructed.

Appellant testified that on the date of the offense he began drinking gin, whiskey, wine, and beer from some time just before dark until around midnight. Appellant claimed he committed the offense because he was under the influence of alcohol and wasn't thinking clearly. Since Appellant pled guilty to the offense charged, he was not claiming that his drinking was a defense to the crime. As a result of his plea, only the following sections regarding intoxication applied to his request.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

.        .        .        .        .

(d) For purposes of this section 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

TEX.PENAL CODE § 8.04(b) and (d). Insanity applies when the actor, at the time the conduct occurs, did not know that his conduct is wrong, as a result of severe mental disease or defect. TEX.PENAL CODE § 8.01.

Appellant claims that he has shown a "disturbance of mental capacity" because he was not shown to have committed a burglary or other felony offense for nineteen years prior to this burglary. However, Appellant testified under direct examination that he knew what he was doing. After being asked why he committed the burglary, and answering that he was under the influence and not thinking straight, the following occurred:

**Q:** You knew you were doing it, didn't you?

**A:** Yeah, but I didn't know—I didn't know no one was at the house and I didn't know that—I was under the impression that it belonged to Linda.

On cross-examination, the following testimony occurred:

**Q:** Mr. Smith, your testified today that the reason you went over to the house or reason you committed this burglary was because you were under the influence of alcohol, is that correct?

**A:** Well, I am not saying—the reason I did it was because this lady asked me to. That was the reason I did it.

**Q:** So really alcohol didn't have anything to do with it?

**A:** I'm not sure. It maybe dulled my sense of reason.

**Q:** Yes, sir. Well, which is it? Are you saying you committed the burglary because the lady asked you to do it or you committed the burglary because you were under the influence of alcohol?

**A:** A combination of both.

**Q:** A combination of both. Sir, you say you went over to the house there to get this property for this Linda woman?

**A:** Uh-huh.

**Q:** Why did you park so far away from the house?

**A:** Well, I—I just parked behind there so I won't be on Glenwood Street so in case the old man come home, you know. She said the old man worked at Tyler Pipe.

**Q:** So nobody would see your car, is that correct?

**A:** Yeah.

.        .        .        .        .

**Q:** Mr. Smith, why is it that you took this tire tool, State's Exhibit Number Five, with you?

**A:** To get in the window.

**Q:** Was that to break into the house, correct?

**A:** (Witness nods head in affirmative response.)

**Q:** Why is it that you had one of these socks on your hand, State's Exhibit Three or Four?

**A:** So I wouldn't leave any fingerprints.

**Q:** So you wouldn't leave any finger-prints once you got into the house, is that correct?

**A:** That's right.

Even though Appellant may have been intoxicated, there is no showing that he did not know his conduct was wrong or that there was any disturbance of mental or physical capacity resulting from his consumption of alcohol. Appellant admitted that he knew what he was doing, that one of the reasons he committed the burglary was because someone asked him to, that he parked on a different street so he wouldn't be seen, that he took a tire tool to use in breaking into the house, and that he wore a sock on one hand so as not to leave fingerprints. There was also evidence presented by the arresting police officers that even though it appeared that Appellant had been drinking, he was not intoxicated. Other evidence showed that Appellant had appeared at the complainant's home two days prior to the break-in and inquired whether the car that was in the yard was for sale even though it did not have any "for sale" signs on it. There is evidence sufficient to show that this was a planned burglary.

In *Still v. State*, 709 S.W.2d 658 (Tex.Cr. App.1986), the defendant testified that he drank almost a case of beer and some whiskey during the afternoon and evening. He became angry at his wife because of the mess she made in their home by vomiting as a result of drinking too much. Still began playing with a pistol, noting that there were six bullets in it. At the trial for shooting his wife, Still testified that he did not perceive the risk of the hammer of the pistol slipping from his thumb until it was too late. He stated that he did not intend to shoot his wife. *Id.* at 660. The court there held that although the evidence showed that the defendant had quite a bit to drink during the afternoon, nothing in his testimony indicated temporary insanity caused by his drinking, even if it was assumed that he was intoxicated. *Id.* at 661. The defendant's description of events was clear and concise, showing no hints of temporary insanity. The court held that there was no evidence that the defendant did not know his conduct was wrong. *Id. Hart v.*

*State*, 537 S.W.2d 21 (Tex.Cr.App.1976), was cited by the court, holding that Sections 8.01 and 8.04 of the Texas Penal Code should be read together, and that in order for a defendant to avail himself of the mitigation provision as a result of intoxication, he must, (1) not know his conduct was wrong, or (2) be incapable of conforming his conduct to the requirements of the law he violated. In the case at bar, Appellant has not met either requirement. He was able to describe what he did and he admitted that he knew what his actions were.

■  Appellant also relies on Section 8.04(c) of the Texas Penal Code, that when evidence tends to show that insanity was caused by intoxication, a court shall charge the jury. However, that section applies only when temporary insanity was relied upon as the defense. Appellant requested the issue of temporary insanity for mitigation purposes only, not as a defense. Appellant cites *Perez v. State*, 172 S.W.2d 314 (Tex.Cr.App.1943), for the proposition that he was entitled to an instruction under this section. Even if this section applied to Appellant, *Perez* is distinguishable from the facts of the case at bar. In *Perez*, the defendant's wife testified that his drinking interfered with his ability to tell right from wrong, and that his mentality was affected by his drinking. *Id.* at 315. Upon rehearing *Perez*, the court found that the testimony relative to temporary insanity was very meager indeed, and barely, if at all, sufficient for an instruction. There was no such testimony in the instant case. Appellant's second point of error is overruled.

■  We will next consider Appellant's third and fourth points of error, by which he complains of the trial court permitting the State's witnesses, Gregg Roberts and David O. Swain, to testify as to Appellant's reputation. The record reflects that when Officer Roberts was asked if Appellant's reputation for being a peaceful, law abiding citizen was good or bad, Appellant sought and received permission to question the witness on voir dire, at the conclusion of which Appellant objected on the grounds

that the witness had not discussed said reputation with people who were in a position to know him best, and that his information was gleaned primarily from conversation with other police officers. Appellant's objection was overruled and the witness was allowed to state his opinion of Appellant's reputation. The record further reflects that when Officer Swain was asked the same question, the same sequence of events transpired. Officer Swain testified that he had discussed Appellant's reputation prior to the offense with "just the troops...."

The admission of reputation evidence under TEXAS RULES OF CRIMINAL EVIDENCE 404(c) is governed by Rule 405. Appellant cites *Hernandez v. State*, 800 S.W.2d 523 (Tex.Cr.App.1990), for the proposition that "in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused." The record reflects that Officer Roberts testified that he had discussed Appellant's reputation prior to the date of the offense with Tyler Police Officers Swain and Deal, as well as Special Agent Sam Cohen, a federal agent, and private citizens. He could only independently remember one private citizen, Billy Chandler, but he did testify that he and Chandler had discussed Appellant's reputation. The trial court allowed the testimony and the detective answered that Appellant's reputation in the community was bad.

Officer Swain was also taken on voir dire before he could express an opinion on Appellant's reputation. He testified that he discussed Appellant's reputation among different police officers prior to the date of the offense and that his opinion was based upon what others said about his reputation. He was allowed to testify that Appellant's reputation was bad.

The cases that Appellant cites concern instances where the testifying witness testified that he obtained his familiarity with the defendant's reputation from specific acts. Here however, both witnesses testified that they were substantially familiar with Appellant's reputation, not with specific acts. In *Hernandez v. State*, 800 S.W.2d 523 (Tex.Cr.App.1990), two peace officers testified regarding the defendant's reputation for being a peaceful and law abiding citizen. Both admitted that their conclusions were based on conversations with others in the community concerning the defendant's prior acts and neither discussed the defendant's reputation with the community members with whom they conversed. *Id.* at 524. The court held that before a witness may give his opinion as to an accused's character based on knowledge of his reputation, the witness must have been substantially familiar with that reputation, and the familiarity must have existed prior to the date of the offense. *Id.* at 525. In the instant case, both officers testified that they were substantially familiar with Appellant's reputation in the community from talking to lay people as well as police officers before the date of the offense.

In all of his points of error, Appellant has emphasized the fact that the jury gave him seventy-five years after his plea of guilty, and that the factors in these points of error most likely led to the jury returning the seventy-five year sentence, and we find beyond a reasonable doubt that they did not. The third and fourth points of error are overruled.

The judgment of the trial court is **affirmed.**

RAMEY, C.J., not participating.