Affirmed and Opinion filed May 25, 2004









Affirmed and Opinion filed May 25, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01193-CR

____________

 

JOHN GUZMAN TELLO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 361st
District Court

Brazos County, Texas

Trial Court Cause No. 29,306-361

 



 

O P I N I O N[1]








Appellant John Guzman Tello was driving a
truck and towing a trailer that came unhitched, jumped a curb, and struck a
pedestrian, resulting in her death. 
Appellant was convicted by a jury of the state jail felony of criminally
negligent homicide and sentenced by the trial court to one year in a state jail
facility.  In four points of error,
appellant complains that (1) the evidence is legally and factually insufficient
to support the conviction; (2) his trial counsel was ineffective; (3) the trial
court erred by failing to hold a hearing on his motion for new trial; and (4)
the trial court erred in finding Carl Stubblefield, one of the State=s witnesses,
qualified to give expert testimony.  We
affirm.

I.  Factual Background

On the afternoon of October 16, 2001,
while driving his Ford F-250 truck, appellant was hauling a trailer with a
partial load of dirt from a home under construction and traveling on
Copperfield Drive in Bryan, Texas.  Pat
Supak was walking on the sidewalk that ran along Copperfield Drive.  As appellant approached the intersection of
Copperfield Drive and Booneville Drive, the trailer that he was towing came
unhitched, jumped a curb, and struck Supak. 
Supak suffered massive injuries and died at an area hospital that
day.  Appellant was charged with
criminally negligent homicide for failing to properly secure the trailer to his
truck.

Appellant=s trailer was a
flatbed, tandem-wheel trailer with three sides consisting of plywood and one
side (the end) that was open.  The
accident report completed by Al Wescoat of the Bryan Police Department on the
day of the accident described the trailer as a 1998 brown, 16-foot, homemade
trailer.  Appellant did not have safety
chains on his trailer on the date of the accident.  The day after the accident, appellant had
safety chains installed on the trailer. 
The trial court took judicial notice of section 545.410 of the
Transportation Code requiring an operator of a light truck to use  safety chains to draw a trailer or
semi-trailer.  Appellant=s truck fell
within the definition of Alight truck.@  The provisions of the Transportation Code
pertaining to safety chains were admitted into evidence.








Officer Allen Sylvester, an advanced
accident investigator, and Officer David Long, an accident reconstructionist,
investigated the accident scene on October 16 and 17.  Office Sylvester testified that he found two
small skid marks where the trailer tires had jumped the curb and some marks in
the dirt showing where the trailer had traveled before it ran into the tree
line along Copperfield Drive.  He also
found that the ball on the bumper of the truck was loose; it was not tight
against the bumper.  Officer Sylvester
testified that the road surface had some black tar ripples, and he opined that
the ripples could have dislodged the trailer from the truck.  The photographs of Copperfield Drive in
evidence show black tar ripples on the road surface.  Officer Sylvester did not see any fresh gouge
or fresh metal on the underside of the hitch. 
He also did not see any gouge marks in the asphalt on the road indicating
that either the front or the rear of the trailer had touched the ground after
detaching from appellant=s truck. 
Officer Sylvester opined that the front of the trailer was level after
it detached from the truck=s bumper; in other
words, the trailer=s front did not drop upon becoming
unhitched.

Officer Sylvester also found that the
trailer contained a load of dirt and a wheelbarrow.  He testified that the dirt and wheelbarrow
were located on the upper-front, right corner of the inside of the
trailer.  The day following the accident,
Officer Sylvester asked appellant where he had loaded the dirt and the
wheelbarrow.  Appellant told Officer Sylvester
that he had placed the load of dirt over the right rear axle.  Officer Sylvester opined at trial that the
force of the trailer hitting the tree caused the dirt and the wheelbarrow to
slide forward.  He also testified that
the hitch was old and that the handle part of the hitch on the trailer had been
hammered on or hit over time.  It was
bent down.








On October 17, Officers Long and Sylvester
went to a machine shop where appellant had taken the trailer to be
repaired.  Officer Sylvester took
photographs of the trailer hitch, and then recovered the hitch after a welder
used a torch to cut the hitch off the trailer. 
The hitch was admitted into evidence at trial.  Also on October 17, Officer Long inspected
the bumper and ball on appellant=s F-250
truck.  Officer Long testified the ball
was a two-inch ball and it was loose on the bumper, causing the ball to rock in
the hole.  The nut was tight, but he
could wobble the shank of the ball in the hole in appellant=s truck
bumper.  He said that was not the proper
placement of a ball to a bumper.  He said
that the shank depth of the ball was too long, and the diameter of the bolt was
too small.  Officer Long demonstrated for
the jury how a trailer hitch properly couples to a ball attached to a truck=s bumper.  He further testified that the front of
appellant=s trailer hitch was bent, so that the tabs
for the locking mechanism did not fit properly into the designated slotsCin other words,
the hitch could not lock in place.  He
opined that the hitch was bent due to it being hammered on and that the hitch
on appellant=s trailer was not able to lock in place
and therefore could come loose from the truck. 
Officer Long then demonstrated how safety chains are designed to
work.  He explained that safety chains
are designed to prevent a trailer from coming detached from a truck=s bumper if the
trailer latching mechanism fails.

Carl Stubblefield testified on behalf of
the State as an expert on trailers and hitches. 
Stubblefield worked at Gooseneck Trailer Manufacturing, where he had
been installing and repairing trailer hitches for 18 years.  He testified that he was familiar with how
trailers work and how they should be loaded. 
Stubblefield testified that he had examined the hitch from appellant=s trailer, and he
opined that the hitch was worn and appeared faulty.  He said it had been hammered on to get it to
latch.  He also testified that the safety
latches were bent down so that the hitch could not lock down.  Stubblefield testified that it appeared the
safety latches had been tapped down to get the hitch to latch, which is not a
normal procedure for latching a hitch properly. 
He opined that the wear spots indicated that the hitch had been hammered
on a number of times.  He further
testified that the safety stop had been abused or pried so that it was useless,
allowing the hitch to come open and flip all the way off the ball.  He said the latch had been bent at an angle,
caused by someone turning too sharp and backing the trailer up.  He testified that, based on the wear marks on
the hitch, the trailer had been pulled with the ball not latched at all.  He opined that the hitch should have been
replaced before the date of the accident. 
He said if the trailer hit a bump in the road, it was possible for the
hitch to become unlatched.  He testified
that it was dangerous to have a ball that wobbled because it would jolt the
coupler.  With respect to the incident in
question, he said a bump could have knocked the latch or hitch back and
loosened the latching mechanism.








Stubblefield also testified regarding the
loading of a trailer.  He said that the
proper way to load a trailer is to put the load up front because a load towards
the back of a trailer could cause the tongue of the trailer to come up and also
cause the truck to sway.  He opined that
loading a trailer directly over the rear axleCor heavier over
the rearCwould tend to make
the end of the truck or the truck bed to which it is attached light.

At trial, a videotaped deposition of
appellant taken in a civil lawsuit filed by the victim=s family was
played for the jury.  Appellant testified
during the deposition that the trailer was a homemade trailer that he purchased
from his father=s neighbor.  He said he did not know when the trailer was
made or who made it.  He had replaced the
tires, repaired the floorboard, and painted the trailer.  However, he had not replaced the trailer
hitch.  Appellant testified that he was
the only person to use the trailer; no one had ever borrowed it.  When asked why he did not have safety chains
on the trailer, appellant responded that he did not have an answer to that
question other than he did not know it was illegal not to have safety chains on
a trailer.  Appellant testified that he
had hooked up the trailer that morning and said that he had placed a load of
dirt and a wheelbarrow over the rear axle. 
He said that the load of dirt on the right rear axle would cause the
trailer to lift up easily, but he said that it did not occur to him on the date
of the accident that would be an unsafe way to load the trailer.  He said that he had never had the trailer
inspected, and the trailer did not have tags when he acquired it.  After the trailer struck Supak, he looked at
the trailer hitch and saw the clip was hanging loose; he assumed that the hitch
had worn out.  After the accident, a
police officer told him he should get his trailer fixed as soon as
possible.  The following day, he had the
hitch repaired and added safety chains.

                                                    II.  Analysis

                                        Legal and Factual
Sufficiency








In his first point of error, appellant
contends that the evidence is legally and factually insufficient to support the
jury=s conviction.  In reviewing the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict.  See Jackson v. Virginia, 443 U.S. 307,
319 (1979).  We accord great deference Ato the
responsibility of the trier of fact [to resolve fairly] conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.@  Id.  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
326. In our review, we determine only whether Aany rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.@  Id.
at 319.

We conduct a factual sufficiency review by
reviewing all the evidence in a neutral light to determine whether (1) the
proof of guilt is so obviously weak as to undermine confidence in the jury=s determination or
(2) the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
We may set aside the jury=s verdict only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Although we review the fact-finder=s weighing of the
evidence and are authorized to disagree with the fact-finder=s determination,
our evaluation should not substantially intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to witness testimony.  Johnson, 23 S.W.3d at 7.  In particular, we must defer to the jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor, an
evaluation better suited for jurors who were in attendance when the testimony
was delivered.  Id. at 8.  AThere is only one
question to be answered in a factual-sufficiency review: Considering all of the
evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt?@  Zuniga v. State, No. 539-02, __
S.W.3d. __, 2004 WL 840786, at *7 (Tex. Crim. App. April 21, 2004) (noting that
evidence of guilt can Apreponderate@ but still be
insufficient to prove the elements of the crime beyond a reasonable doubt).

Appellant was charged with failing to
properly secure a trailer to his truck, causing the death of Supak.  Section 19.05 of the Penal Code provides that
a person commits an offense if he causes the death of an individual by criminal
negligence.  Tex. Pen. Code Ann. ' 19.05(a) (Vernon
2003).  Section 6.03(d) of the Penal Code
defines the culpable mental state for a conviction of criminally negligent
homicide as follows:








A person acts with
criminal negligence, or is criminally negligent, with respect to circumstances
surrounding his conduct or the result of his conduct when he ought to be aware
of a substantial and unjustifiable risk that the circumstances exist or the
result will occur.  The risk must be of
such a nature and degree that the failure to perceive it constitutes a gross
deviation from the standard of care that an ordinary person would exercise
under all the circumstances as viewed from the actor=s standpoint. 

Tex. Pen. Code Ann. ' 6.03(d) (Vernon
1994).  A[C]riminal
negligence means that the actor should have been aware of the risk surrounding
his conduct, but failed to perceive it.@  Dowden v. State, 758 S.W.2d 264, 270
(Tex. Crim. App. 1998) (en banc) (citation omitted).  ACriminal
negligence involves inattentive risk creation, that is, the actor ought to be
aware of the risk surrounding his conduct or the results thereof.@  Montoya v. State, 744 S.W.2d 15, 29
(Tex. Crim. App. 1987) (en banc) (comparing criminal negligence to involuntary
manslaughter, for which the culpable mental state is recklessness).  A[I]t is the >failure to
perceive= the risk of a
resulting death which must rise to the level of a >gross deviation= from an ordinary
standard of care.@  Graham
v. State, 657 S.W.2d 99, 101 (Tex. Crim. App. 1983) (en banc).  The State has to prove that an appellant
ought to have been aware of a substantial and unjustifiable risk, not that the
appellant was aware of a substantial and unjustifiable risk.  Lopez v. State, 630 S.W.2d 936, 940
(Tex. Crim. App. 1982).  Accident is not
a defense to negligent homicide.  Sykes
v. State, 399 S.W.2d 349, 352 (Tex. Crim. App. 1966).  Ignorance of the law is not a defense to its
violation.  See, e.g., Almanza
v. State, 365 S.W.2d 360, 362 (Tex. Crim. App. 1963).








The facts of this case are unique.  We are unable to find another opinion of a
Texas court addressing the sufficiency of evidence to support a conviction of
criminally negligent homicide arising out of a trailer coming unhitched from a
truck while being towed.  The majority of
cases decided by the Court of Criminal Appeals discussing criminally negligent
homicide have involved the allegedly inadvertent firing of guns and motor vehicle
accidents where speeding, racing, and intoxication often are contributing
factors.  See, e.g., Still v.
State, 709 S.W.2d 658, 660 (Tex. Crim. App. 1986) (en banc) (stating that
factors pertinent to a determination of whether the evidence shows an awareness
of the risk that circumstances exist or that the result will occur are the Adefendant=s familiarity with
the gun and its potential for injury; a defendant=s conduct in handling
the gun; how the weapon could be fired; how the weapon was actually fired,
i.e., attendant circumstances@); Graham,
657 S.W.2d at 101 (holding that acts of speeding, racing, and ignoring a steady
red traffic control was legally and factually sufficient evidence to support
conviction for criminally negligent homicide); Lopez, 630 S.W.2d at 941
(finding that evidence supported jury=s finding that an
ordinary or reasonably prudent person, in appellant=s position, ought
to have been aware that a substantial and unjustifiable risk was created when
he exceeded the speed limit and ran a red light on a city thoroughfare at 11:30
p.m.).  This court, too, has addressed
the sufficiency of evidence to sustain a conviction for criminally negligent
homicide involving automobile accidents. 
See, e.g., Thompson v. State, 676 S.W.2d 173, 176 (Tex.
App.CHouston [14th
Dist.] 1984, no writ) (evidence that defendant did not recall seeing victim
prior to her vehicle=s striking him, that victim=s body was found
72 feet from point of impact and defendant=s vehicle left 116
feet of skid marks, and that defendant told investigating police she was
driving 50 miles per hour at time of accident occurred when children were on
their way to school in residential area with posted speed limit of 30 miles per
hour was sufficient to support conviction of criminally negligent homicide).








Although there are no Texas cases discussing criminal
liability for a trailer coming unhitched, this factual scenario has been the
subject of civil litigation.  See,
e.g., Moore v. State Farm Mut. Auto Ins. Co., 792 S.W.2d 818, 820
(Tex. App.CHouston [1st Dist.] 1990, no writ)
(stating that jury=s no negligence finding in civil lawsuit
was against great weight and preponderance of the evidence when defendant
placed the wrong size ball in a two-inch socket to hook up a trailer, drove on
a rough road, and a hit a bump in the road, causing the bolt to come loose from
the bumper, and resulting in the trailer swerving into other lane of traffic
and hitting another vehicle); Dulaney v. Stephens, No. 05-96-00189-CV,
1998 WL 204525, at *1 (Tex. App.CDallas April 23,
1998, pet. denied) (not designated for publication) (concluding that evidence
of negligence was conclusive where defendants= homemade trailer
loaded with pipe came unhitched from truck and was left in middle of road where
another vehicle struck it, resulting in the death of two individuals in that
vehicle).  Furthermore, this court
recently found the evidence was legally and factually sufficient to sustain a
conviction for criminally negligent homicide in a case involving an accident
with a tractor-trailer rig on a narrow bridge. 
See Stadt v. State, 120 S.W.3d 428, 433B37 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d) (involving accident that occurred on a
bridge known as the Adeath bridge@ when appellant
was speeding).

With that background discussion of Texas case law, we turn
to the inquiry at hand.  We must decide
whether the evidence is legally sufficient to support the conviction of
appellant for criminally negligent homicide. 
After a careful review of the record and relevant Texas authority, we
conclude the State met its burden in this case. 
Appellant failed to use safety chains, as required by section 545.410 of
the Transportation Code.  All of the
State=s witnesses
testified about the age of the hitch, as well as its poor condition.  They also testified that the hitch was not
properly secured on the date in question and discussed how this caused the
accident in question.  Stubblefield, who
had extensive experience working with and repairing trailer hitches, examined
appellant=s hitch and gave detailed testimony about
its condition and the manner in which it was secured to appellant=s truck before it
broke loose and struck Supak.  He
testified that it was worn and faulty, that the safety latches did not work,
that the safety stop had been abused so that it was unworkable and that in this
condition the trailer could become unlatched if it hit a bump in the road.  He said the hitch should have been replaced
before the accident.  In summary, there
is evidence in the record that appellant caused the death of Supak, that he
ought to have been aware that there was a substantial and unjustifiable risk of
death from his failure to properly secure the trailer, and that his failure to
perceive that risk constituted a gross deviation from the standard of care an
ordinary person would have exercised under like circumstances.  We conclude the jury could have found the
essential elements of the offense of criminally negligent homicide beyond a
reasonable doubt.








In conducting a factual sufficiency review, we review all
of the evidence in a neutral light. 
Appellant testified that did not know of the requirement that he use
safety chains.  He said that he had not
previously experienced difficulty with the trailer hitch coming undone.  However, the fact that he had not experienced
difficulty with the trailer on prior occasions is not probative of whether he
ought to have been aware of the substantial risk of death caused by his failure
to properly secure his trailer on the date of the accident in question.  Considering the evidence of the age and wear
of his trailer hitch and appellant=s failure to
secure his trailer with safety chains, we conclude the evidence is factually
sufficient to support the jury=s conviction.  Accordingly, appellant=s first point of
error is overruled.

Ineffective Assistance of Counsel

In his second point of error,
appellant complains that he was denied effective assistance of counsel during
trial.  The bases of his complaint are
the following alleged deficiencies by his counsel:  (1) failing to object to the testimony of the
decedent=s husband, James,
other than identity testimony, during the guilt-innocence phase of trial; (2)
admitting during closing argument that appellant was negligent; and (3) failing
to challenge for cause two jurors who knew the decedent or her husband.  We hold that the decision not to object
during the testimony of Supak=s husband did not
amount to ineffective representation and further hold that appellant has failed
to develop a record to show that his trial counsel was otherwise deficient.








Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  U.S.
Const. Amend. VI; Tex. Const.
art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 1.05
(Vernon 1977).  This right includes the
right to reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S.
668, 686 (1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App.
1997).  To prove ineffective assistance
of counsel, an appellant must show that (1) trial counsel=s representation
fell below an objective standard of reasonableness, based on prevailing
professional norms; and (2) the result of the proceeding would have been
different but for trial counsel=s deficient
performance.  Strickland, 466 U.S.
at 688B92; see also,
e.g., Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).  An appellant has the burden of
proving his claim by a preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).  We apply a
strong presumption that trial counsel was competent.  Thompson, 9 S.W.3d at 813.  We presume counsel=s actions and
decisions were reasonably professional and motivated by sound trial
strategy.  Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant has the burden to rebut this presumption by presenting
evidence illustrating why trial counsel did what he did.  See id.  An appellant usually cannot meet this burden
if the record does not specifically focus on the reasons for trial counsel=s conduct.  Osorio v. State, 994 S.W.2d 249, 253
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  In the absence of a proper evidentiary record
developed at a hearing on a motion for new trial, it is extremely difficult to
show that trial counsel=s performance was deficient.  Freeman v. State, 125 S.W.3d 505, 506
(Tex. Crim. App. 2003).  When there is no
hearing on a motion for new trial or if trial counsel does not appear at such a
hearing, an affidavit from trial counsel becomes almost vital to the success of
a claim of ineffective assistance of counsel.  Howard v. State, 894 S.W.2d 104, 107
(Tex. App.CBeaumont 1995, pet. ref=d).








In this case, the trial court=s judgment was
rendered on October 14, 2002.  Appellant
filed a motion for new trial alleging ineffective assistance of counsel and
requested a hearing on November 13, 2002. 
In an affidavit submitted with the motion for new trial, appellant=s counsel stated
some of the testimony of Supak=s husband should
not have been admitted during the guilt-innocence phase, but he did not object
during the testimony because he did not want to offend the jury.  Trial counsel did not address his conduct in
leaving the two complained-of jurors on the panel or his admission that
appellant was negligent.  The record is
silent as to the reasoning and strategy behind his decisions in those
instances.  Appellant, therefore, has not
rebutted the presumption that his trial counsel made those decisions in the
exercise of reasonable professional judgment, and appellant has not
demonstrated in the record that trial counsel rendered ineffective assistance
by failing to challenge the two jurors[2]  and by admitting in closing argument that
appellant was negligent.  See Thompson,
9 S.W.3d at 814.  We will not speculate
about counsel=s strategic decisions, and thus, we cannot
find appellant=s trial counsel ineffective based on those
two asserted grounds.  See Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.CHouston [1st
Dist.] 1996, no pet.) (ADue to lack of evidence in the record
concerning trial counsel=s reasons for conducting voir dire as he
did and for not objecting to certain testimony and argument, we are unable to
conclude that trial counsel=s performance was
deficient.@). 
We therefore overrule appellant=s second point of
error.

                                               Motion for New
Trial








In his third point of error, appellant
complains that the trial court erred in not holding a hearing on appellant=s motion for new
trial after the initial hearing was cancelled. 
Appellant asks this Court to reverse and remand this matter for a new
trial or, alternatively, to abate this appeal and order the trial court to
conduct a hearing on appellant=s motion for new
trial.  A notice of hearing on appellant=s motion for new
trial was issued by the trial court on November 21, setting the hearing on
December 6.  Appellant states in his
brief that the hearing was cancelled. 
There is no indication in the record that appellant rescheduled the
hearing.  Although appellant complains in
his third point of error that the trial court should have reset his motion for
new trial for a hearing, appellant did not develop a record of his efforts to
reschedule the hearing.  In the absence
of a record showing appellant=s efforts to
reschedule the hearing on his motion for new trial, he cannot complain about
the overruling of his motion for new trial by operation of law.  See, e.g., Johnson v. State,
925 S.W.2d 745, 748 (Tex. App.CFort Worth 1996,
pet. ref=d) (stating that
it was incumbent upon defendant to Adevelop some
record, before the expiration of the court=s jurisdiction,
which demonstrated his efforts to reschedule the hearing@ on the defendant=s motion for new
trial).

In any event, appellant was not deprived
of an opportunity to offer proof in support of his motion for new trial.  His trial counsel provided an affidavit that
was submitted with appellant=s motion.  Our review of the affidavit leads us to
conclude that appellant=s complaint that his counsel was
ineffective for failing to object to some of the testimony of Supak=s husband is
without merit.  Appellant=s counsel
testified in his affidavit that he did not object during the testimony of the
decedent=s husband because
he did not want to offend the jury. 
Thus, appellant=s counsel offered a trial strategy for why
he did not object.  Although in hindsight
he states that he should have objected, we cannot find that he was ineffective
based on the record before us.  The
motion for new trial and affidavit do not provide a reasonable basis to
conclude that appellant=s trial counsel was ineffective. We
overrule appellant=s third point of error.

                                                 Expert Testimony








Appellant complains in his fourth point of
error that Carl Stubblefield was not properly qualified as an expert
witness.  The State=s attorney asked
Stubblefield about his work experience and whether he had examined the hitch in
question.  The prosecuting attorney then
asked whether Stubblefield had an opinion about the hitch, based on his
experience and his work.  He answered
that he did, and then told the jury that the hitch was worn and appeared faulty.  Appellant=s counsel did not
object to Stubblefield=s qualifications until after Stubblefield
provided his expert opinion.  The trial
court overruled the objection.  Appellant
failed to preserve his objection to Stubblefield=s
qualifications.  See Tex. R. App. P. 33.1(a); see also
Rocha v. State, No. 05-03-00808-CR, 2004 WL 516169, at *3 (Tex App.CDallas March 17,
2004, no pet. h.) (not designated for publication) (AA party may not
successfully challenge evidence admitted elsewhere without objection.@) (citation
omitted); Coy v. State, No. 01-02-00593-CR, 2003 WL 22512075, at *5
(Tex. App.CHouston [1st Dist.] Nov. 6, 2003, pet.
filed) (not designated for publication) (ATo preserve error,
appellant must object at the earliest opportunity and continue to object each
time the objectionable evidence is offered.@) (citation
omitted).  We overrule appellant=s fourth point of
error.

Having overruled all of appellant=s points of error,
we affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

Judgment
rendered and Opinion filed May 25, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.

Publish
C Tex. R. App. P. 47.2(b).

 

 











[1]  Effective
September 1, 2003, Brazos County is no longer a part of the district over which
the First and Fourteenth Courts of Appeals have jurisdiction. See Act of
May 1, 2003, 78th Leg., R.S., ch. 44, 2003 Tex. Sess. Laws 81. The Act applies
to cases in which the transcripts were not filed before the effective date of
the Act, September 1, 2003. Because the record in this case was filed before
the effective date of the Act, we have jurisdiction over this case.

 

 





[2]  During voir
dire, a venire member, Ms. Lovas, said she was a close personal friend with and
attended church with Pat Supak and sang at her funeral.  Another venire member, Mr. Rundle, initially
informed counsel for both parties that he knew the Supak family well.  He said he had known them for 22 years and
that James Supak was his associate department head.  Another venire member, whose name is not
identified, said he or she knew James well. 
The jury numbers of Ms. Lovas and Mr. Rundle are not reflected in the
reporter=s record.  The
record indicates that Ruth Lovas was selected as a juror.  A Mr. Runge was pulled aside by
counsel and the trial court for individual questioning.  He said he knew the Supaks well and that he
was the department head when James was the associate department head.  (No university or college is
identified.)  Although the record
suggests that counsel for both parties agreed to remove Mr. Runge, it is not
clear whether he was removed from the panel. 
Ms. Rundle was selected as a juror.  It also is unclear if the unidentified venire
member who said he or she knew James well was selected as a juror.  Assuming that two of the venire members knew
the Supaks well, it is difficult to imagine any reasonable trial strategy for
failing to challenge those individuals. 
The Court of Criminal Appeals has held, however, that without additional
evidence in the record concerning trial counsel=s
reasons for not challenging or striking a venire member, we are unable to
conclude that appellant=s trial counsel=s
performance was deficient.  Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); see also Delrio
v. State, 840 S.W.2d 443, 446B47 (Tex.
Crim. App. 1992) (holding that trial counsel=s
failure to challenge a venire member who voiced lack of impartiality did not
constitute ineffective assistance).